The PEOPLE of the State of
Colorado, Petitioner,

v.

David E. HARRIS, Respondent.

No. 00SC185.

Supreme Court of Colorado,
En Banc.

March 11, 2002.

Rehearing Denied April 8, 2002.

Nancy L. Flax, C. Keith Pope, Denver, CO, Attorney for Petitioner.

Ken Salazar, Attorney General, Lauren A. Edelstein, Assistant Attorney General, Denver, CO, Attorneys for Respondent.

Chief Justice MULLARKEY delivered the Opinion of the Court.

This case arises out of David E. Harris's conviction after a jury trial of first degree sexual assault. We granted certiorari to review the court of appeals' unpublished decision in *People v. Harris*, No. 98 CA0335 (Colo.App.1999). The court of appeals reversed the conviction and ordered a new trial, holding that the trial court had impermissibly excluded evidence of the victim's prior sexual encounter, contrary to the rape shield statute, section 18–3–407(1)(b), 6 C.R.S. (2001). It also determined that the trial court impermissibly admitted hearsay evidence, which violated Harris's right to confront a witness against him.

We hold that the trial court properly excluded evidence of the victim's earlier sexual conduct. We also conclude that the challenged statements were hearsay and should not have been admitted into evidence. The error, however, was harmless beyond a reasonable doubt. Accordingly, we reverse the court of appeals' judgment and remand the case to that court with directions to reinstate the trial court's judgment of conviction.

## I. FACTS AND PROCEDURAL HISTORY

The crime occurred shortly after the twenty-six-year-old victim P.A. completed her shift at a fast-food restaurant. She purchased a snack before leaving and walked to a nearby park, where she sat on a bench and started eating. P.A. testified that while sitting on the bench, defendant Harris approached her and attempted to initiate a conversation. After she rebuffed him, P.A. claims that Harris became hostile and vituperative. According to the victim, Harris then dragged her through the park to a baseball field where he forced her to perform oral sex on him, after which he placed a condom on his penis and vaginally raped her.

She testified that she told the defendant that she did not want to have intercourse with him. After Harris ejaculated, P.A. asserts, he tossed the used condom on the ground behind him.

Once Harris permitted her to leave, P.A. testified, she ran to a sheriff's station in the vicinity and reported the rape. P.A. was transported to the hospital where a rape examination was conducted; the examining nurse discovered an abrasion on her vaginal wall that measured approximately .5 millimeter in length.

Police investigators went to the scene immediately upon receiving P.A.'s report where they found two items of significance. First, they observed the victim's snack food strewn about a park bench, consistent with her account of where she had been. Second, they collected a discarded condom containing a liquid substance near the bleachers at the baseball field. Tests on the condom indicated that Harris was the probable source of the semen recovered in it.[1] After obtaining these test results, police investigators interviewed Harris, who initially denied involvement in the assault. After being confronted with the DNA evidence, however, Harris admitted that he had sex with P.A. but maintained that P.A. approached him, offered to have sex with him, and provided the condom.

Alice Lasley, Harris's girlfriend, accompanied him to the interview. The two were questioned in separate rooms by the same investigator, Officer Leslie Copp. Upon obtaining contradictory information from Lasley, the officer confronted Harris, who changed his story to conform with his girlfriend's account.

At the close of the interview, Harris was charged with one count of first degree sexual assault, a class three felony, in violation of section 18–3–402(1)(a), 6 C.R.S. (1998) and with seven counts of habitual criminal based on prior felony property crimes, in violation of section 16–13–101, 6 C.R.S. (1998). An element of the sexual assault offense charged in this case is the use of force or violence.[2] Specifically, a person commits sexual assault in the first degree where he "knowingly inflicts sexual intrusion or penetration on a victim ... if ... the actor causes submission of the victim through the actual application of physical force or physical violence." § 18–3–402(1)(a), 6 C.R.S. (1998). As his defense, Harris contended that the sexual encounter with P.A. was consensual, and was not an assault by force or violence.

Before voir dire, the prosecution made an oral motion in limine, based on the rape shield statute, to exclude evidence that P.A. had had consensual sex four days before the assault. Harris objected, asserting that the prior sexual encounter could account for the abrasion and would, inferentially, support his defense that his sexual encounter with P.A. was consensual. Hence, Harris argued that the evidence was relevant and admissible under section 18–3–407(1)(b), 6 C.R.S. (2001).

The trial court conducted an in camera hearing during which P.A. testified that she had engaged in consensual intercourse four days before the alleged assault. P.A. described this encounter as gentle and her partner as her serious boyfriend. She testified that in the days following this sexual contact she felt no pain in her vaginal area.

Linda Larkin, the nurse who examined P.A. after the assault, also testified outside the presence of the jury.[3] She attested that during the course of her post-assault examination of P.A., she observed fresh scratches

---

1. At trial, the parties stipulated that Harris was the probable source of the semen found in the condom. A comparison of Harris's blood with the semen confirmed that he was in fact the source of the semen.

2. The statute was revised in 2000. The current formulation eliminates the element of force. The section of the statute under which Harris was charged now reads: "Any actor who knowingly inflicts sexual intrusion or sexual penetration on a victim commits sexual assault if: (a) The actor causes submission of the victim by means of

sufficient consequence reasonably calculated to cause submission against the victim's will." 18–3–402, 6 C.R.S. (2001).

3. At trial, Nurse Larkin was qualified as an expert in sexual assault examinations on the basis of both her training as a sexual assault nurse examiner, which required her to undergo extensive training in the examination of and care for sexual assault victims, and her experience in examining more than fifty sexual assault victims.

on P.A.'s arm and jaw; she also discovered the .5 millimeter abrasion an injury that she commonly observed during sexual assault examinations. While the nature and location of the abrasion were, in her view, consistent with P.A.'s report of forced penetration from behind, she conceded that it was possible, albeit "not most likely," that the abrasion could have resulted from P.A.'s prior consensual intercourse. It was unlikely that the earlier encounter caused the injury, she explained, because during consensual intercourse, "the normal sexual response is that the vagina's well lubricated and then there's not the friction that would cause the abrasion." Even if the prior encounter had caused an abrasion, she testified, it likely would have healed in the intervening days because vaginal tissue is vascular in nature, meaning that "lots of blood flow[s] to [the] tissue," so it heals "rather fast."

The trial court granted the prosecution's motion and excluded the evidence on the basis of this testimony and "in view of the presumption in the rape shield statute." Nevertheless, at trial, defense counsel was able to cross-examine Nurse Larkin about other possible sources of the abrasion, including the possibility that the injury resulted from consensual sex.

Also prior to voir dire, Harris's attorney made an oral motion to exclude statements made by his girlfriend Lasley to the police when she and Harris were interviewed separately.[4] During that interview, Officer Copp used the girlfriend's statements to elicit statements from Harris that contradicted his prior statements to Copp. The People argued that Officer Copp's testimony would not amount to hearsay because she would not be testifying about any of the girlfriend's statements. Rather, the prosecution maintained that Copp's testimony would be limited to the contradictory statements made by Harris in response to statements allegedly made by Lasley. The trial court deferred ruling on the issue until trial commenced; it later denied Harris's motion.

At trial, the judge allowed into evidence through the testimony of Officer Copp three references to Lasley's statements. Defense counsel objected to two of these on hearsay grounds.

At the close of trial the jury found Harris guilty of first degree sexual assault; the trial court subsequently found him guilty of six habitual criminal counts and sentenced him to a term of sixty-four years in the Department of Corrections.

Harris appealed his convictions. In an unpublished opinion, a majority of the court of appeals reversed the judgment of conviction and remanded for a new trial; Judge Rothenberg dissented. *People v. Harris*, No. 98CA335 (Colo.App. Oct. 7, 1999). Concluding that the trial court committed reversible error in excluding evidence of the victim's consensual sexual activity with another man four days earlier, the court of appeals decided that the statutory presumption created by the rape shield statute did not attach in this case because the evidence of P.A.'s prior encounter might show that the act charged was not committed by Harris. Judge Rothenberg disagreed on the ground that section 18-3-407(1)(b) did not mandate admission of the evidence.

The court of appeals also determined that the trial court erred in denying Harris the right to confront and cross-examine witnesses when it admitted his girlfriend's hearsay statements through the testimony of Officer Copp. Again, Judge Rothenberg disagreed.

The People petitioned for a writ of certiorari, which this court granted.[5] For the reasons set forth below, we reverse the judgment of the court of appeals.

---

4. At some point prior to trial, Alice Lasley left Colorado. The parties were unable to locate her; hence, she was deemed unavailable. Neither party challenged this designation either at trial or on appeal.

5. Specifically, we granted certiorari on the following issues:

(1) Whether the court of appeals correctly determined that evidence of P.A.'s prior sexual encounter was relevant, material, and met a statutory exception set forth in Colorado's rape shield statute, 18-3-407(1)(b), 6 C.R.S. (1999).

(2) Whether the court of appeals erroneously concluded that certain testimony by Officer Leslie Copp constituted hearsay.

## II. ANALYSIS

The People advance two arguments on appeal. First, they assert that the trial court did not abuse its discretion when it determined that Harris failed to show that (1) the evidence of P.A.'s prior sexual conduct fell within the exception to the rape shield statute set forth in section 18–3–407(1)(b), and (2) the evidence was material and relevant to the case. Even if the exclusion of this evidence constituted error, they contend, it was harmless. Second, the People argue that the court of appeals erred in determining that the officer's testimony recounting statements made by Harris's girlfriend was hearsay. Thus, they urge us to reverse the court of appeals.

### A. EXCLUSION OF EVIDENCE OF P.A.'S PRIOR SEXUAL CONDUCT

#### 1. Standard of Review

We review a trial court's factual determination as to the relevance of evidence for abuse of discretion. *People v. Melillo*, 25 P.3d 769, 773 (Colo.2001); *People v. Dunlap*, 975 P.2d 723, 741 (Colo.1999). Under this standard, the trial court's sound discretion will not be overturned on appeal unless the court's evidentiary ruling was manifestly arbitrary, unreasonable, or unfair. *King v. People*, 785 P.2d 596, 603 (Colo.1990); *People v. Hampton*, 758 P.2d 1344, 1348 (Colo.1988).

#### 2. The Rape Shield Statute

Although the rules of evidence generally favor the admission of evidence, the rape shield statute established "a presumption that evidence relating to a rape victim's sexual conduct is irrelevant to the proceedings." *Melillo*, 25 P.3d at 773; *People in Interest of K.N.*, 977 P.2d 868, 872 (Colo.1999); *People v. Murphy*, 919 P.2d 191, 195 (Colo.1996).

This was an important substantive change in the law of sexual assault. Before the rape shield statute was enacted, evidence that an alleged victim engaged in sexual relations with another was routinely admitted into evidence. Assertion of a consent defense often turned the case into a trial of the victim.

By rejecting the status quo, the rape shield statute made the "unmistakable statement that evidence of a victim's sexual history shall be presumed to be irrelevant" and generally renders a victim's sexual history inadmissible. *Melillo*, 25 P.3d at 773 (internal quotation marks omitted); *Interest of K.N.*, 977 P.2d at 872.

Strong public policy considerations undergird this statute. It is the legislature's unequivocal commitment to the principle that "victims of sexual assaults should not be subjected to psychological or emotional abuse as the price of their cooperation in prosecuting sex offenders." *People v. McKenna*, 196 Colo. 367, 372, 585 P.2d 275, 278 (1978). Accordingly, the rape shield statute proscribes subjecting victims, who already have suffered a "crime of violence and domination calculated to humiliate, injure and degrade the female," to the second trauma inherent in an irrelevant and embarrassing probe into the intimate details of their personal lives. *Id.; see also Interest of K.N.*, 977 P.2d at 874. Thus, unless an accused can make a preliminary showing that the evidence is relevant to some issue in the case, an inquiry into a victim's prior or subsequent sexual conduct is barred. *Interest of K.N.*, 977 P.2d at 872–73; *Murphy*, 919 P.2d at 194–95; *McKenna*, 196 Colo. at 371–72, 585 P.2d at 278.

The rape shield statute's general prohibition on the admission of evidence of a rape victim's sexual conduct is qualified by three statutory exceptions. § 18–3–407, 6 C.R.S. (2001). Thus, the evidence is not presumptively irrelevant under the statute if: (1) it is evidence of a victim's prior sexual contact with the accused; (2) it is evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, disease, or similar evidence; or (3) if the defendant makes an offer of proof showing that the evidence is relevant to a material issue in the case. *Id.* Evidence coming within one of these provisions is not automatically admissible, however: it remains subject to the usual rules of evidence. *People v. Martinez*, 634 P.2d 26, 31 (Colo.1981). Specifically, a trial court must apply CRE 403 to balance the probative value of the proffered evidence

against any possible unfair prejudice. *See Melillo,* 25 P.3d at 774 n. 3.

Section 18–3–407 strikes a balance between the defendant's rights and the victim's privacy interest by conditioning admission of evidence of the victim's sexual history on the defendant's preliminary showing that such evidence is relevant and material to the case. Relevant evidence is defined in CRE 401 as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Unless the defendant demonstrates that the proffered evidence meets a statutory exception under section 407(1) and makes a sufficient showing of relevancy in the defendant's offer of proof under 407(2), the trial court will deny the motion. *Murphy,* 919 P.2d at 197; *McKenna,* 196 Colo. at 373–74, 585 P.2d at 279.

■ In the case now before us, Harris asserts the evidence should be admitted pursuant to section 407(1)(b) [6] to explain that the vaginal abrasion may have been caused by P.A.'s prior consensual intercourse and not by Harris. The trial court, however, determined that Harris did not show that evidence of P.A.'s earlier intercourse satisfies section 407(1)(b).

We agree. Evidence of P.A.'s prior sexual encounter proved nothing. It was not logically relevant to the question of whether Harris committed sexual assault and the trial court properly excluded it under the rape shield statute's presumption of irrelevance. Such prior sexual relations evidence would have shown only that Harris may not have caused the abrasion. It would not, and logically could not, have shown whether P.A. consented to her sexual encounter with Harris. As we will discuss, this is the only logical conclusion that can be reached in light

of Harris's consent defense and the facts of this case.

If the jury accepted Harris's theory that consensual intercourse could have caused the abrasion, then the question of who caused the abrasion was irrelevant to whether Harris used force. Alternately, if the jury believed that only nonconsensual intercourse could have caused the abrasion, then evidence of P.A.'s consensual intercourse with her boyfriend was irrelevant to whether Harris used force. Thus, in light of Harris's defense of consent and Nurse Larkin's testimony that consensual intercourse could have caused the abrasion, evidence that P.A. had consensual intercourse with her boyfriend four days before her encounter with Harris is not logically relevant to whether Harris committed sexual assault.

For these reasons, Harris failed to discharge his burden of making a preliminary showing of relevance sufficient to rebut the rape shield statute's presumption of irrelevance.[7] Hence, the trial court did not abuse its discretion in excluding this evidence.

As the trial developed, Harris actually had the opportunity to rebut, and arguably did effectively rebut, the assumption that the abrasion could have resulted only from his sexual encounter with P.A. This was accomplished without having to introduce evidence of P.A.'s prior sexual conduct. For example, during cross-examination of Nurse Larkin at trial, defense counsel elicited testimony that the abrasion could have resulted from prior consensual non-lubricated sex. She also testified that "one woman's vagina might be more easily stimulated to secrete than another," and admitted that P.A.'s medical history did not indicate whether P.A. lubricated easily.

---

6.  Specifically, that subsection provides:

    (1) Evidence of specific instances of the victim's or a witness' prior or subsequent sexual conduct ... shall be presumed to be irrelevant except:

    (a)

    ...

    (b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, disease, or any similar evidence

of sexual intercourse offered for the purpose of showing that the act or acts charged were or were not committed by the defendant. 18–3–407(1), 6 C.R.S. (2001).

7.  Because the evidence in question was not logically relevant, we do not reach the question of whether the probative value of the evidence was substantially outweighed by the danger of unfair prejudice.

This court's prior cases do not support admission of this evidence. *People v. Martinez,* on which Harris and the court of appeals rely, is inapposite. 634 P.2d 26. There we considered whether the trial court erred in excluding evidence of the victim's prior sexual act with another man where the examining doctor detected motile sperm in the victim's vaginal tract and the defendant denied any sexual intercourse with the victim. Concluding that the trial court misapplied the rape shield statute, this court explained that evidence of the victim's prior sexual act was relevant "in that it tends to render more probable the inference that the defendant did not have sexual intercourse" with the victim. *Id.* at 31. In a footnote we distinguished the type of case now before us, stating that "[i]f defendant were claiming the prosecutrix consented to sexual intercourse then this evidence would be subject to the rules of [the rape shield statute], since the evidence would not fall within the exception to those rules." *Id.* at n. 7.

*Martinez* is distinguishable because, inter alia, here the defendant did not claim that he did not have sex with the victim. Instead, he claimed that another partner caused her vaginal trauma and that fact, by faulty inference, proved that her intercourse with the defendant was consensual. Unlike *Martinez,* proof that another sexual partner was a potential, or even the actual, source of P.A.'s abrasion was not evidence that Harris did not commit the act charged. Under the facts of this case, unlike those in *Martinez,* the prior sexual act had no relevance to the issue of whether the defendant committed sexual assault.

■ Harris's argument that the prosecution "opened the door" to the evidence of P.A.'s prior sexual encounter by introducing evidence of the abrasion is also unavailing. We have previously held that the concept of "opening the door" represents an effort by courts to prevent one party from gaining an unfair advantage by presenting evidence that, without being placed in context, creates an incorrect or misleading impression. *Melillo,* 25 P.3d at 775; *Murphy,* 919 P.2d at 195; *People v. Miller,* 890 P.2d 84, 98–99 (Colo.1995).

We first examined the relationship between the concept of "opening the door" and the rape shield statute in *Murphy,* 919 P.2d at 195–98. There, the male defendant argued that evidence of a male rape victim's sexual orientation was relevant to consent and was admissible because the prosecution "opened the door" when the victim testified that he was heterosexual. *Id.* We held that where a defendant shows that the prosecution "opened the door," he may overcome the rape shield statute's presumption of irrelevance. *Id.* at 195.

As we recently explained in *Melillo,* however, "*Murphy* demonstrates that application of the 'opening the door' concept is not determinative as to whether evidence is admissible under the rape shield statute." 25 P.3d at 775. Instead, pursuant to the rape shield statute, a defendant is still required to make a showing that the evidence is relevant to a material issue in the case. *Id.; Murphy,* 919 P.2d at 197. Accordingly, even if the prosecution did "open the door" in this case, Harris could not demonstrate the evidence's relevance as required by the rape shield statute. *Melillo,* 25 P.3d at 776; *Murphy,* 919 P.2d at 195–98.

■■ Harris also argues that his inability to cross-examine P.A. as to her prior sexual activities denied him his Sixth Amendment right to confront the witness against him. This claim is without merit. The Sixth Amendment right to confrontation and the Fifth Amendment right to due process of law require only that the accused be permitted to introduce all relevant and admissible evidence. *McKenna,* 196 Colo. at 374, 585 P.2d at 279; *see also United States v. Kasto,* 584 F.2d 268, 272 (8th Cir.1978) (citing *United States v. Nixon,* 418 U.S. 683, 711, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974)). Since we have upheld the district court's determination that the proffered evidence was irrelevant to the issue of P.A.'s consent to sexual relations with Harris, its exclusion deprived him of no constitutional right.

In sum, defendant Harris failed to rebut the rape shield statute's presumption of irrelevance. We hold that the trial court properly excluded evidence of P.A.'s earlier sexual

act under section 18–3–407(1)(b), 6 C.R.S. (2001).

## B. HEARSAY

■ Harris submits a separate ground for overturning his conviction and ordering a new trial. He argues that the trial court impermissibly allowed the prosecution to introduce the out-of-court statements of Alice Lasley, an unavailable witness. During the investigation of this crime, Lasley accompanied Harris, her then-boyfriend, to the police station, where they were questioned in different rooms. At trial, Officer Copp testified that she confronted Harris with the contradictory information supplied by Lasley. Harris now objects to three of these exchanges.

Although the prosecutor did not directly inquire about the girlfriend's statements to Officer Copp, the prosecutor's questions, defense counsel argues, were designed to permit the jury to infer from the officer's testimony the content of the girlfriend's statements. Thus, Harris argues that (1) the evidence was being offered to show Lasley's belief in the implied propositions— namely that Harris did wear condoms, receive oral sex, and have intercourse with white [8] women and (2) her credibility and accuracy of perception were untestable. In addition to alleging a violation of Colorado's rules of evidence, Harris asserts a Confrontation Clause violation: Harris was unable to cross-examine the girlfriend about the statements that she allegedly made to Officer Copp during the interview, and which Officer Copp relayed in her testimony when she described confronting Harris about the conflicting information provided by the girlfriend.

Hearsay is a statement, other than one made by the declarant while testifying at trial or at a hearing, offered into evidence to prove the truth of the matter asserted. CRE 801(c). Under the rules of evidence, a "statement" is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by her to be communicative. CRE 801(a). These rules are identical to their federal counterparts.

In this case, Harris points to three statements made by Officer Copp that, he contends, amount to hearsay, and which, therefore, should have been inadmissible at trial. In order to analyze Harris's claim, the statements must be put in context.

At trial, Officer Copp testified that at the beginning of his interview, Harris stated that he had never received oral sex, did not use condoms, and had not engaged in sexual intercourse with any white females since he had been in Colorado Springs.

The following colloquy then took place:

PROSECUTOR: Did you have an opportunity to speak with Alice Lasley alone when she came to the police station?

OFFICER COPP: Yes, I did.

. . . .

PROSECUTOR: Based on that conversation, did you have an opportunity to return to the defendant, Mr. Harris, and confront him with some of the things you had learned in that interview?

OFFICER COPP: Yes.

PROSECUTOR: Specifically, did you have an opportunity to confront the defendant, Mr. Harris, about the issue of condoms?

Harris's attorney objected. Characterizing the testimony as "quasi-hearsay," defense counsel challenged the admissibility of the statements because, in his view, the prosecution sought impermissibly to offer the girlfriend's statements for the truth of their contents. The prosecution argued that the statements were being offered not for the truth of their contents but for the reaction they elicited from Harris. The trial court overruled Harris's objection.

Officer Copp proceeded to testify about her exchange with Harris. She stated that she informed Harris that a white female had reported a rape in Monument Valley Park in the vicinity of the discarded condom that contained his semen. At that point he recalled having sex in the park with a bi-racial

---

**8.** P.A. is a white woman; Harris is an African–American man. As discussed in the text, the parties' races are relevant to the hearsay issues.

female and, a few moments later, remembered also having sex under a tree with a white female who provided a condom. He subsequently remembered a third sexual encounter in the park, this one with a bi-racial white-Indian female fast-food restaurant employee who also gave him a condom.

Officer Copp then testified that Harris told her that he had never had oral sex. The prosecutor asked Officer Copp if she confronted Harris with any information she had earlier obtained from the girlfriend. Officer Copp replied that she "confronted him with the fact that Alice had told me that they have oral sex, that she would perform oral sex on him." The trial court sustained defense counsel's objection on hearsay grounds, struck the testimony, and instructed the jury to disregard the statement.

The following exchange, which now forms the second basis for Harris's hearsay-related challenges, ensued:

PROSECUTOR: Okay. Just outline for us the question you asked the defendant and then I'm going to ask you his response. Without telling us what anyone else said, what specifically did you ask him in that regard? And then I'm going to ask you his response.

[A colloquy about whether Officer Copp should refer to her written report.]

OFFICER COPP: I'll refer. I asked—I then asked him if Alice saying that she give—gives him blow jobs was a lie.

DEFENSE COUNSEL: [Objection, hearsay.]

OFFICER COPP: He said, "Yes, that was a lie."

DEFENSE COUNSEL: Same objection, Judge.

THE COURT: Thanks. Overruled on that one.

■ The prosecutor proceeded with the following exchange, which now forms the third basis for Harris's hearsay challenge.

PROSECUTOR: I'm not asking you what any conversation was you had with anyone. Did you specifically confront the defendant about a particular statement made by Alice to you and if so, what was your question?

OFFICER COPP: I confronted David about Alice's statements regarding Harris's statement on their way to the Police Operations Center on this particular day about the Harris having sex with a white female. . . . Defendant said he never said that to Alice and he doesn't understand why she is bringing that up.

Defense counsel raised no contemporaneous objection to this colloquy.[9] According to Officer Copp, Harris ultimately changed his story regarding oral sex, having sex with white women, and using condoms, after being confronted with Lasley's statements.

The People asserted that Lasley's statements were introduced not to prove the truth of the matter asserted, but instead to impeach Harris's credibility by showing that he changed his story. The court of appeals rejected this argument, and thus ruled that the trial court erred in admitting it.

We agree that the objected-to colloquies are hearsay. Although Lasley's statements ostensibly were offered to show only that Harris contradicted himself, the statements actually were used substantively.

The trial court correctly recognized this in sustaining defense counsel's objection to Officer Copp's testimony that she "confronted [Harris] with the fact that Alice had told me that they have oral sex, that she would perform oral sex on him." This statement is indistinguishable from the other testimony to which Harris objected. All of the testimony to which Harris objected formed a continuous narrative, and all related to the manner in which the crime was committed: against a white woman, involving oral sex, and using a condom. Because Lasley's statements were used substantively to prove the truth of the matter asserted, i.e. that Harris did engage in acts consistent with the commission of the

---

9. The general rule is that failure to make a timely and sufficient objection during the trial constitutes a waiver of that ground on appeal. *Larkin v. People*, 177 Colo. 156, 160, 493 P.2d 1, 3 (1972). An exception to the rule permits an appellate court to consider an alleged error that was not brought to the attention of the trial court if the error affects the substantial rights of the defendant. Crim. P. 52(b).

crime, Officer Copp's testimony relaying those statements was hearsay. Thus, the trial court committed error in admitting the statements into evidence.

Having determined that Lasley's statements constitute hearsay, we turn to Harris's argument that the trial court's admission of these statements violated his right to confrontation under the federal and state constitutions.

█ The right of confrontation includes the right of cross-examination, during which a defendant may elicit facts tending to discredit a witness by showing that her testimony is biased or false. *Pointer v. Texas*, 380 U.S. 400, 404, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); *People v. Dist. Court*, 933 P.2d 22, 25 (Colo.1997); *People v. Thurman*, 787 P.2d 646, 651 (Colo.1990).

The confrontation right and hearsay rules "stem from the same roots" and are designed to protect similar interests based on the premise that testimony is much more reliable when given under oath at trial, where the declarant is subject to cross-examination and the jury may observe his demeanor. *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).

In this case, Lasley had left Colorado some time before trial and was unavailable to testify. Her testimony came in through Officer Copp. The prosecution did not contend that the statements came within a firmly rooted exception to the hearsay rules. *Cf. Stevens v. People*, 29 P.3d 305, 311 (Colo.2001). Additionally, there is no indication that Lasley's statements possess particularized guarantees of trustworthiness. *Id.* Consequently, we conclude that admission of Lasley's hearsay statements violated Harris's confrontation rights and thus constituted constitutional error.

Having concluded that constitutional error occurred in this case, we turn to the prosecution's assertion that this error was harmless.

█ Violation of a criminal defendant's right of confrontation is a trial error. *Harrington v. California*, 395 U.S. 250, 252, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Blecha v. People*, 962 P.2d 931, 942 (Colo.1998); *Vega v. People*, 893 P.2d 107, 120 (Colo.1995).

This error requires reversal unless the appellate court can "declare a belief that the error was harmless beyond a reasonable doubt." *Blecha*, 962 P.2d at 942; *Key v. People*, 865 P.2d 822, 827 (Colo.1994). The prosecution bears the burden of proving that Lasley's hearsay statements did not contribute to Harris's conviction or that the "error was harmless beyond a reasonable doubt." *Blecha*, 962 P.2d at 942; *Key*, 865 P.2d at 827. If there is a reasonable probability that Harris could have been prejudiced by the error, the error cannot be harmless. *Chapman v. California*, 386 U.S. 18, 23–24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Blecha*, 962 P.2d at 942.

█ In assessing whether denial of the right to confrontation constituted harmless error, this court must consider whether, assuming that the damaging potential of the statements was fully realized, a reviewing court nonetheless can say that the error was harmless beyond a reasonable doubt. *Merritt v. People*, 842 P.2d 162, 169 (Colo.1992). We should examine a number of factors, including the importance of the declarant's statement to the prosecution's case, whether the statement was cumulative, the presence or absence of corroborating or contradictory evidence on the material points of the witness's testimony, the extent of the cross-examination otherwise permitted, and the overall strength of the prosecution's case. *Id.* Further, a court must consider "whether the guilty verdict actually rendered in this trial was surely unattributable to the error." *Sullivan v. Louisiana*, 508 U.S. 275, 279, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993); *Blecha*, 962 P.2d at 942.

In considering the importance of Lasley's hearsay statements to the prosecution's case, we note that the prosecutor had an opportunity to address the jury directly on three occasions: opening statement, closing argument, and rebuttal. On none of these occasions did the prosecutor refer to the Lasley hearsay, suggesting that the inadmissible statements were of minimal importance to the prosecution's case. *Cf. Blecha*, 962 P.2d at 943. Moreover, the content of the hearsay statements—Harris's sexual practices and

choice of partners—was unconnected to, and attenuated from, the central issue of whether Harris committed sexual assault. The prosecution's case did not, however, include evidence either corroborating or contradicting Lasley's statements, and Lasley's statements were not cumulative.

The prosecution presented strong evidence that Harris sexually assaulted P.A. The victim provided detailed testimony about the nature of the assault that was corroborated by investigating officers and the examining nurse. Physical evidence recovered at the scene of the alleged assault (P.A.'s scattered snack and the condom containing Harris's DNA) tended to corroborate her version of events. Testimony provided by Officers Nethercot and Bromley, with whom P.A. filed a report when she ran to the sheriff's station after the alleged assault, established that P.A.'s demeanor and appearance, including her distraught deportment and ripped clothing, during her report of the incident were consistent with that of crime victims generally. Nurse Larkin's physical examination of P.A. revealed that the injuries to her neck, arms, and vagina were consistent with P.A.'s story.

Considering the independent evidence linking Harris to the crime, the persuasive corroborative evidence substantiating P.A.'s account of the assault, and the lack of importance of Lasley's hearsay statements to the prosecution's case, the impact these inadmissible statements had on the jury was insignificant. This error appears to be "so unimportant and insignificant," *Chapman*, 386 U.S. at 22, 87 S.Ct. 824, that it is to be deemed harmless since the erroneous admission of Lasley's hearsay statements surely did not contribute to Harris's guilty verdict. Even if the jury did believe that Harris had in the past engaged in oral sex, used condoms, or had sexual encounters with white women, this evidence would be insufficient, whether taken in isolation or in combination, to support a conclusion that Harris committed sexual assault here. This record fails to establish a reasonable probability that Harris could have been prejudiced by the erroneous admission of Lasley's hearsay statements. Thus, we hold that the constitutional error in admitting the Lasley hearsay statements was harmless beyond a reasonable doubt. *Sullivan*, 508 U.S. at 279, 113 S.Ct. 2078; *Blecha*, 962 P.2d at 942.

### III.

In sum, we conclude that the trial court properly excluded evidence of P.A.'s earlier sexual encounter. We also determine that the statements to which Harris objected were hearsay, but we conclude that the error was harmless. We thus reverse the decision of the court of appeals and remand this case to that court with directions to reinstate the trial court's judgment of conviction.