**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Arthur L. MARTINEZ, Defendant–Appellant.**

**No. 07CA0087.**

Colorado Court of Appeals, Div. II.

Sept. 3, 2009.

---

John W. Suthers, Attorney General, John J. Fuerst III, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Andrew C. Heher, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge ROTHENBERG.*

Defendant, Arthur L. Martinez, appeals the judgment of conviction entered upon a jury verdict finding him guilty of second degree assault and conspiracy to commit second degree assault. We affirm.

## I. Background

In mid-September 2002, Dominick Fernandez met S.M. at a bar where she worked. He flirted with her while she tended bar, but when he asked for her phone number, she gave him the phone number of the victim, her boyfriend.

On September 23, Fernandez visited the bar with defendant. The two men sat at the bar and Fernandez again flirted with S.M. The victim was also there and S.M. pointed him out to Fernandez. According to the prosecution's evidence, Fernandez offered S.M. $1000 to "let him beat up" the victim. S.M. responded by telling Fernandez that the victim had a black belt in martial arts. She then went to the victim's table, and told him what Fernandez had said. The victim ignored the comment.

At closing time, defendant and Fernandez left the bar and got into their car. The victim left shortly afterwards with his friend.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2008.

Defendant and Fernandez saw them leaving, stopped the car, and walked toward them.

There were conflicting accounts of what occurred next. Defendant testified that (1) the victim and his friend made threatening gestures; (2) defendant hit the victim once with his fist, the victim went down, and defendant stepped over him; (3) the victim's friend punched defendant and those two fought; and (4) defendant saw Fernandez "hammering away" at the victim.

According to the prosecution's evidence, defendant had a flashlight in his hand as he and Fernandez approached the victim and his friend. The victim's friend testified that he threw the first punch at Fernandez and then heard the sound of the flashlight hitting the victim's head. He further testified that he saw defendant hit the victim with the flashlight two more times while the victim was on the ground and unconscious, and that defendant only stopped when the friend intervened. According to the friend, one of the assailants told him, "You better move your bitch friend before we run him over." S.M.'s cousin also worked at the bar and testified that defendant waved the flashlight and said, "Where are you at now, pussy?" as he and Fernandez drove away.

The victim's orbital bone and jaw were fractured, he lost several teeth, and he was unable to see for two months after the attack. Part of his ear was torn off and had to be reattached.

Both defendant and Fernandez were charged with felonies arising from the assault, but Fernandez reportedly fled and was unavailable for trial.

## II. Court's Statements Regarding Self–Defense

▮ Defendant first contends the trial court erred by making statements in the jury's presence about the law of self-defense. Relying on *Sheftel v. People*, 111 Colo. 349, 141 P.2d 1018 (1943), and Crim. P. 30, he contends the trial court's comments impermissibly shifted the burden of proof to him, prejudiced his right to a fair trial, and "reflected an unequivocal belief there was testi-mony supporting the view that [defendant] was the initial aggressor." We disagree.

▮ Because defendant did not object to the court's comment, we review for plain error. *See People v. Hennion*, 923 P.2d 256, 259 (Colo.App.1995). Plain error is error that so undermines the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *Harris v. People*, 888 P.2d 259, 267 (Colo. 1995); *Hennion*, 923 P.2d at 259.

▮ A trial court has wide discretion in conducting a trial, but the judge "must exercise restraint over his or her conduct and statements to maintain an impartial forum." *People v. Coria*, 937 P.2d 386, 391 (Colo. 1997).

▮ Nevertheless, casual remarks by the trial court while passing on objections to testimony do not constitute reversible error unless they reflect adversely upon the defendant or upon the issue of his or her guilt or innocence. *People v. Corbett*, 199 Colo. 490, 496, 611 P.2d 965, 969 (1980).

Crim. P. 30 governs jury instructions and provides, as relevant here, that "[b]efore argument the court shall read its instructions to the jury, but shall not comment upon the evidence."

▮ With respect to a trial court's comments, questions, and demeanor, more than mere speculation concerning the possibility of prejudice must be demonstrated to warrant a reversal. The record must clearly establish bias, and the test is whether the trial judge's conduct so departed from the required impartiality as to deny the defendant a fair trial. *Coria*, 937 P.2d at 391; *People v. Rodriguez*, 209 P.3d 1151, 1162 (Colo.App. 2008) *(cert. granted* June 22, 2009).

Thus, in *People v. Martinez*, 652 P.2d 174, 178 (Colo.App.1981), a division of this court concluded that the trial court's remark describing the prosecution's anticipated rebuttal evidence as being "of significance" did not warrant reversal. The division stated:

A trial judge must remain free of all taint of bias and partiality, and should not indicate to the jury any personal opinion that certain testimony is worthy or unworthy of

belief. The trial court's comment here was ambiguous respecting the evidence to come. Considering the context of the statement and the repeated references to the [subject of the rebuttal evidence] by defense witnesses, we conclude that the comment, though less circumspect than it might have been, did not impart any personal opinion of the trial court to the jury respecting the testimony to come.

*Martinez,* 652 P.2d at 178 (citations omitted).

However, in *Sheftel,* the court concluded the trial court made several improper comments on the evidence, which resulted in unfair prejudice to the defendant. 111 Colo. at 352–53, 141 P.2d at 1020–21. There, the defendant maintained that, although he purchased stolen goods—new granulated ingot aluminum—he was under the impression the aluminum was scrap metal. *Id.* at 351–52, 141 P.2d at 1020–21. The trial court contradicted defendant's evidence by stating that the metal at issue was *not* scrap metal and that certain evidence presented by the defendant was irrelevant. *Id.* at 352–54, 141 P.2d at 1020–21. The court insinuated that the defense knew it was irrelevant, and added that a proper question asked by defense counsel during the examination of a witness was "dressed up." *Id.* at 353–54, 141 P.2d at 1021. The trial court also suggested that the question was unimportant, and that "there was something sham about [the] defense." *Id.* at 354, 141 P.2d at 1021.

The supreme court concluded the trial court's comments were unfairly prejudicial and reversed the defendant's conviction for buying and receiving stolen goods. *Id.* at 352, 141 P.2d at 1020; *see People v. Garcia,* 186 Colo. 167, 171–72, 526 P.2d 292, 294 (1974) (stating that in *Sheftel,* "the remarks of the trial judge clearly invaded the fact-finding role of the jury").

In this case, the trial court's statements occurred during the following part of the prosecutor's closing argument:

[Prosecutor]: And then, ladies and gentlemen, there's the evidence that, unlike what the Defendant said, which is that they just pulled out of a parking space and they came around the corner. They saw an opportunity and they took it when they saw . . . [the victim] and [his friend] come out of that bar that evening.

What happened? They made a U-turn. And you can see it on that video. They didn't back out of the parking lot and happen to drive by. They made a U-turn and drove around for the confrontation.

Self-defense which is an affirmative defense to both of these? I don't think so. Ladies and gentlemen, right there it is. What could they have done? They could have left. They had the perfect opportunity if [defendant] was so scared and he was very nervous about this, about the fact that . . . [the victim] had a black belt. And he told you he was really nervous about that. How could he have redeemed that? He could have left.

[Defense counsel]: Judge, I'm going to object. This is improper argument. It misstates the law of self-defense. The Defendant has no duty to retreat. I object to this argument.

[Court]: I think it's in line with the instruction on the affirmative defense. *If you'll note, we have some testimony that [defendant] was the initial aggressor.* And I think if you'll look at that instruction, it is arguable.

But you will get an opportunity to . . . counter that. . . . And it's not to say that the Court's finding that that's the case. I'm only finding that there's some testimony in that regard.

(Emphasis added.)

Thus, here, the trial court was responding to defendant's objection to the prosecutor's closing argument by finding there was "some evidence" defendant was the initial aggressor. Its ruling was on a matter of law, it did not invade the fact-finding province of the jury, and the court immediately instructed the jurors that *they* were to decide the facts. *See Garcia,* 186 Colo. at 171–72, 526 P.2d at 294 (concluding the trial court's statement in the presence of the jury that it would instruct the jury on first degree murder was not an impermissible and prejudicial comment).

**1032**

We therefore conclude the trial court's comment did not violate Crim. P. 30 and did not constitute error, much less plain error.

### III. Jury Instruction on Duty to Retreat

■ Defendant next contends the trial court's instruction on self defense did not adequately inform the jury that he had no duty to retreat from the encounter with the victim. We disagree.

■ It is the trial court's duty to instruct the jury on all matters of law. *People v. Stewart*, 55 P.3d 107, 120 (Colo.2002); *People v. Roadcap*, 78 P.3d 1108, 1113 (Colo.App. 2003). However, " 'it is equally the duty of counsel to assist the court by objection to erroneous instructions, and by the tender of instructions covering matters omitted by the court.' " *Stewart*, 55 P.3d at 120 (quoting *Fresquez v. People*, 178 Colo. 220, 231, 497 P.2d 1246, 1252 (1972)).

■ When, as here, a defendant does not object to a jury instruction, a plain error standard applies. *Stewart*, 55 P.3d at 120; *Roadcap*, 78 P.3d at 1113. In the context of jury instructions, plain error occurs when a review of the entire record demonstrates that the instruction affected a substantial right, and that there was a reasonable possibility the error contributed to the conviction. *Stewart*, 55 P.3d at 120; *People v. Garcia*, 28 P.3d 340, 344 (Colo.2001); *Roadcap*, 78 P.3d at 1113.

■ In self-defense cases, the defendant is entitled to a jury instruction on the doctrine of no-retreat when one is requested, when the facts raise the issue, and when the evidence supports a jury finding that the defendant was not the initial aggressor. *Cassels v. People*, 92 P.3d 951, 958 (Colo. 2004) (concluding trial court erred in refusing "a *defense-requested self-defense instruction* that [was] justified by the evidence") (emphasis added); *Idrogo v. People*, 818 P.2d 752, 753–54 (Colo.1991). "A trial court's failure to instruct the jury on the doctrine of no-retreat in cases where the defendant was not the initial aggressor creates a risk that the jury will not acquit the defendant because it will consider the defendant's use of force unreasonable in light of the possibility of retreat."

*Cassels*, 92 P.3d at 956. A standard self-defense instruction "does not adequately apprise the jury that a defendant who is not the initial aggressor does not need to retreat before using force in self-defense." *Id.* "[T]he trial court must tailor the self-defense instruction in light of the particular facts of the case." *Id.* at 958.

As relevant here, the court instructed the jury:

It is an affirmative defense to the crime of Assault in the First Degree and Assault in the Second Degree that the defendant used physical force upon another person:

1. in order to defend himself or a third person from what he reasonably believed to be the use or imminent use of unlawful physical force by the victim(s), and

2. he used a degree of force which he reasonably believed to be necessary for that purpose.

The defendant is not justified in using physical force if he is the initial aggressor, except that his use of physical force under the circumstances is justifiable if:

1. he withdraws from the encounter, and

2. effectively communicates to the other person his intent to withdraw, and

3. the other person continues or threatens the use of unlawful physical force.

In addition to proving all of the elements of the crime charged beyond a reasonable doubt, the prosecution also has the burden to disprove the affirmative defense beyond a reasonable doubt.

After considering all the evidence, if you decide the prosecution has failed to disprove beyond a reasonable doubt any one or more of the elements of the affirmative defense you must return a verdict of not guilty.

Actual danger is not necessary to justify acting in self-defense. Apparent necessity, if reasonable under the conditions and circumstances, justifies acting in self-defense to the same extent as real or actual danger.

These instructions adequately explained the law of self-defense, *see* § 18–1–704, C.R.S.2008, and the fact that the prosecution

had the burden of proving defendant did not act in self-defense.

Unlike in *Cassels* and *Idrogo*, defendant here did not request a no duty to retreat instruction nor did the prosecutor argue that he had a duty to retreat. During her closing argument, the prosecutor was simply rebutting defendant's claim that he acted in self-defense because he was "so scared and ... nervous" about the victim and the fact that he "had a black belt." It was only in this context that the prosecutor pointed out that defendant had chosen to remain and confront the victim and his friend. The issue of no duty to retreat was then raised by defense counsel who, while objecting, stated, "The Defendant has no duty to retreat."

We therefore conclude the trial court's failure to give a no-retreat instruction did not constitute plain error. *See People v. Lee*, 30 P.3d 686, 689 (Colo.App.2000) (concluding the trial court did not commit plain error by failing to include sudden heat of passion in its jury instruction on second degree murder, because the defendant did not request an instruction or an interrogatory on that issue).

### IV. Admission of Co–Defendant's Statements

■ Defendant next contends the trial court abused its discretion by admitting into evidence testimonial hearsay statements made by the co-defendant, Fernandez. Again, we disagree.

■ The violation of a defendant's right of confrontation is an error of constitutional magnitude and requires reversal unless the reviewing court can "declare a belief that the error was harmless beyond a reasonable doubt." *People v. Harris*, 43 P.3d 221, 230 (Colo.2002); *Blecha v. People*, 962 P.2d 931, 942 (Colo.1998). Thus, the prosecution has the burden of proving that any testimonial hearsay statements made by Fernandez did not contribute to defendant's conviction and were harmless beyond a reasonable doubt. *Harris*, 43 P.3d at 230; *Blecha*, 962 P.2d at 942. If there is a reasonable probability that defendant could have been prejudiced by the error, it is not harmless. *Harris*, 43 P.3d at 230 (citing *Chapman v. California*, 386 U.S.

18, 23–24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)); *Blecha*, 962 P.2d at 942.

■ In analyzing whether a denial of defendant's right of confrontation constituted harmless error, we consider several factors, "including the importance of the declarant's statement to the prosecution's case, whether the statement was cumulative, the presence or absence of corroborating or contradictory evidence on the material points of the witness's testimony, the extent of the cross-examination otherwise permitted, and the overall strength of the prosecution's case." *Harris*, 43 P.3d at 230; *accord Blecha*, 962 P.2d at 942; *Merritt v. People*, 842 P.2d 162, 169 (Colo.1992). We also consider whether the guilty verdict actually rendered was surely unattributable to the error. *Sullivan v. Louisiana*, 508 U.S. 275, 279–80, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (stating that "[t]he most an appellate court can conclude is that a jury *would surely have found* petitioner guilty beyond a reasonable doubt") (emphasis in original); *Harris*, 43 P.3d at 230; *Blecha*, 962 P.2d at 942.

■ The Confrontation Clause does not bar the admission of testimonial statements for purposes other than proving the truth of the matter asserted. *Crawford v. Washington*, 541 U.S. 36, 59 n. 9, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004); *People v. Isom*, 140 P.3d 100, 103 (Colo.App.2005) (holding that the admission of out-of-court statements did not violate the defendant's confrontation right when they were offered not for their truth, but to provide a context for the declarant's statements); *see Tennessee v. Street*, 471 U.S. 409, 414, 105 S.Ct. 2078, 85 L.Ed.2d 425 (1985) (holding that a defendant's right of confrontation was not violated by the introduction of an accomplice's confession for the nonhearsay purpose of rebutting the defendant's testimony that his own confession was coercively derived from the accomplice's confession).

As relevant here, a detective who had investigated the assault testified without objection that Fernandez had been charged with conspiracy. The prosecutor asked the detective whether he had been "involved in an agreement for a statement by [Fernandez]" to identify the person with the flashlight.

Defense counsel objected on the grounds that the statement was hearsay and violated defendant's right to confrontation.

The prosecutor argued that she was not offering the statement for the truth of the matter asserted but "for the purpose of ID to show the investigation." She added, "This investigation went on for almost four years. This jury needs to hear why it took so long to be able to find this person." The prosecutor said she did not intend to ask the detective what Fernandez had said, but whether the detective had received information from Fernandez that led to the inclusion of defendant in a photo lineup.

The prosecutor was permitted to elicit this testimony from the detective:

[Prosecutor]: And were you a part of an interview that was done with [Fernandez, who] was charged in this matter as well, in which we were seeking information?

[Detective]: Yes.

[Prosecutor]: And during that interview, did he give you … information that led you to putting a photograph of the Defendant in a photographic lineup … ?

[Detective]: Yes.

[Prosecutor]: And was [Fernandez] given a deal for that?

[Detective]: Yes.

[Prosecutor]: Was he still going to have to plead to a felony?

[Detective]: Yes, he was.

[Prosecutor]: And considering his criminal history, was he still looking at prison time?

[Detective]: Yes.

[Prosecutor]: And that was due to the conspiracy, correct?

[Detective]: Correct.

[Prosecutor]: And when you originally charged [Fernandez], were you aware that he was not the person that had caused the serious bodily injury to [the victim]?

[Detective]: Yes, I was.

[Prosecutor]: So he was charged under our conspiracy theory?

[Detective]: Correct.

[Prosecutor]: And he was going to plead guilty under that theory?

[Detective]: Yes.

[Prosecutor]: Has [Fernandez] ever come forward to take advantage of the deal?

[Detective]: No.

[Prosecutor]: What did he do?

[Detective]: He fled the state.

Because the detective's limited testimony regarding statements made by Fernandez did not include hearsay, they did not implicate defendant's right of confrontation, and we conclude the trial court did not abuse its discretion in admitting such testimony.

### V. Argument That Defendant Tailored His Testimony

■ Defendant next contends the trial court violated his rights under the Colorado Constitution by permitting the prosecutor to attack his credibility by arguing that he shaped or "tailored" his testimony in response to the trial testimony of other witnesses. We disagree.

During the prosecutor's cross-examination of defendant, she asked, "[Y]ou've had the advantage of sitting in court today and listening to all the testimony, as well as yesterday; is that correct?" Defendant responded, "Correct."

Later, during the prosecution's closing argument, this colloquy occurred:

[Prosecutor]: [Defense counsel] was adamant that his client was so truthful. Well, he's had kind of an advantage, hasn't he? *He's been able to sit in here the whole time and listen to what everybody had to say.*

[Defense counsel]: I'm going to object. This is improper. He's entitled [to] sit and hear the trial to which he's argued.

[Prosecutor]: I can argue that he's not credible.

[The court]: I understand. Ladies and gentlemen, the Defendant obviously is entitled to sit in on his own trial. It would be clearly unconstitutional to prohibit that, unless certain stringent requirements are met; and they certainly haven't been met in this case.

I would simply remind you again, it is simply argument and not evidence.

[Prosecutor]: Thank you. And ladies and gentlemen, it is absolutely—we have so many fundamental constitutional rights, each and every one of us have them because we live in this wonderful country. And one of those is that he has the right to be in court and confront and cross-examine witnesses.

What I am arguing is not that he does not have a right to be here and that he does not have the right to listen and offer help to his attorney and his defense to give a meaningful defense.

What I'm telling you is that you get to judge the credibility of all witnesses and that *he had an advantage that nobody else did, which is that he was able to tailor his statement with what everybody else had to say because he's been here.*

[Defense counsel]: I object, Judge. This is improper testimony. The lead detective had the same opportunity to tailor his testimony. This is improper testimony, commenting on the Defendant's presence at trial. We object to it.

[The court]: Noted. And I'm sure the jury also noted that the Detective was present in court during the trial also.

(Emphasis added.)

■■ A criminal defendant who testifies at trial subjects his or her credibility to consideration by the jury. *People v. Ziglar*, 45 P.3d 1266, 1269 (Colo.2002); *People v. Constant*, 645 ·P.2d 843, 846 (Colo.1982); *People v. Walters*, 148 P.3d 331, 335–36 (Colo.App. 2006). In such cases, the court will instruct the jury that, in determining the credibility of any witness, the jury may consider his or her means of knowledge. *See Fresquez*, 178 Colo. at 232, 497 P.2d at 1252.

In *Portuondo v. Agard*, 529 U.S. 61, 65, 120 S.Ct. 1119, 146 L.Ed.2d 47 (2000), the United States Supreme Court held that the federal Constitution does *not* prohibit a prosecutor from commenting during closing argument that defendants who testify at trial have an opportunity to tailor their trial testimony to fit that of other witnesses. However, the Court left to state courts to determine whether these types of comments are "desirable as a matter of sound trial practice."

*Portuondo*, 529 U.S. at 73 n. 4, 120 S.Ct. 1119.

We are unaware of any states that have held, since *Portuondo* was announced, that such comments violate their respective state constitutions. Indeed, one state has reached a contrary conclusion. *Cf. State v. Martin*, 210 P.3d 345, 346, 348 (Wash.Ct.App.2009) (holding that a prosecutor's cross-examination of a defendant concerning the defendant's opportunity to tailor his testimony to evidence previously introduced at trial does not violate the Washington Constitution, and reasoning that "because the federal constitution permits a jury to consider a defendant's opportunity to tailor testimony, the questions posed herein were allowable").

Our supreme court has held on several occasions that the Colorado Constitution provides more protection for our citizens than do similarly or identically worded provisions of the United States Constitution. *See People v. Oates*, 698 P.2d 811, 818–19 (Colo.1985) (holding that the warrantless installation of an electronic tracking device in a drum of chemicals prior to sale violated the purchaser's right to protection against unreasonable searches under the Colorado Constitution); *People v. Sporleder*, 666 P.2d 135, 144 (Colo. 1983) (holding that the warrantless installation of a pen register to record numbers dialed from the defendant's home telephone constituted an unreasonable search under the Colorado Constitution); *Charnes v. DiGiacomo*, 200 Colo. 94, 100, 612 P.2d 1117, 1121 (1980) (holding that a bank customer has a reasonable expectation of privacy in bank records of the customer's financial transactions for purposes of state constitutional protections against unreasonable searches); *People v. Paulsen*, 198 Colo. 458, 461, 601 P.2d 634, 636 (1979) (interpreting the state constitution to preclude a retrial of the defendant where the trial court erroneously entered post-jeopardy judgment of acquittal on grounds unrelated to factual guilt or innocence).

Nevertheless, defendant here has not given us a persuasive reason for concluding the Colorado Constitution offers protection to a defendant, under these circumstances, that is independent of and supplemental to the pro-

tections provided by the United States Constitution. Accordingly, we reject his argument that the state constitution prohibits the tailoring argument made by the prosecutor in this case.

In urging us to disapprove of such arguments, defendant relies on supreme court decisions from New Jersey and Minnesota, in which the courts exercised their supervisory authority to disapprove of tailoring arguments made by prosecutors. *See State v. Swanson,* 707 N.W.2d 645 (Minn.2006); *State v. Daniels,* 182 N.J. 80, 861 A.2d 808 (2004); *see also* Colo. Const. art. VI, § 2(1) (granting the supreme court "a general superintending control over all inferior courts, under such regulations and limitations as may be prescribed by law"); *Overturf v. Dist. Court,* 198 Colo. 516, 519, 602 P.2d 850, 852 (1979) ("The trial court has an affirmative obligation to exercise judicial discretion. That obligation is subject to this Court's supervisory authority granted by Colorado Constitution, Art. VI, Section 2(1)."); *Spann v. People,* 193 Colo. 53, 55, 561 P.2d 1268, 1269 (1977) ("[A] trial judge's exercise of discretion [in sentencing] is subject to this court's supervisory authority granted by Colorado Constitution Article VI, section 2(1)."); *Anderson v. Kenelly,* 37 Colo.App. 217, 218, 547 P.2d 260, 261 (1975) (noting a trial court's "general supervisory power over attorneys as officers of the court ... [to] scrutinize contingent fee contracts and determine the reasonableness of the terms thereof"); *but see Eichhorn v. Kelley,* 111 P.3d 544, 548 (Colo.App.2004) (refusing to adopt a rule prohibiting the beneficiary of a civil order from prosecuting a contempt and observing that court of appeals "has no supervisory authority *over the state court system* ") (emphasis added); *see generally* P.V. Smith, Annotation, *Superintending Control over Inferior Tribunals,* 112 A.L.R. 1351 (1938) (discussing scope of supervisory power of state supreme courts and intermediate appellate courts).

We need not determine the extent of our supervisory authority, however, because both the New Jersey and Minnesota decisions held that prosecutors *may* make such arguments in cases where there is specific evidence of tailoring.

In *Daniels,* the New Jersey Supreme Court distinguished between the two categories of prosecutorial accusations of tailoring: generic and specific.

Generic accusations occur when the prosecutor, despite no specific evidentiary basis that defendant has tailored his testimony, nonetheless attacks the defendant's credibility by drawing the jury's attention to the defendant's presence during trial and his concomitant opportunity to tailor his testimony.... Allegations of tailoring are specific when there is evidence in the record, which the prosecutor can identify, that supports an inference of tailoring.

We agree with Justice Stevens [concurring in *Portuondo v. Agard,* 529 U.S. at 76, 120 S.Ct. at 1119] that generic accusations of tailoring debase the "truth-seeking function of the adversary process," violate the "respect for the defendant's individual dignity," and ignore "the presumption of innocence that survives until a guilty verdict is returned." ... Therefore, pursuant to our supervisory authority, we hold that prosecutors are prohibited from making generic accusations of tailoring during summation. When a prosecutor makes specific accusations of tailoring, however, we apply a different analysis. If there is evidence of tailoring, beyond the fact that the defendant was simply present at the trial and heard the testimony of other witnesses, a prosecutor may comment, but in a limited fashion. The prosecutor's comments must be based on the evidence in the record and the reasonable inferences drawn therefrom. Moreover, the prosecutor may not refer explicitly to the fact that the defendant was in the courtroom or that he heard the testimony of other witnesses, and was thus able to tailor his testimony. In all such circumstances, we expect that prosecutors will act in good faith.

861 A.2d at 819 (citations omitted).

In *Swanson,* the Minnesota Supreme Court stated:

[T]he state implied that Swanson, in exercising his rights under the Confrontation Clause to be present at trial and hear the testimony against him, tailored his testimony to the state's evidence, but beyond the

"fit" between Swanson's testimony and the other evidence, the state provides no evidence that Swanson did, in fact, tailor his testimony in light of the prosecution's case. One can reasonably argue that, in some cases, such comments by the state are merely a statement of the obvious and therefore should be permitted. *We believe, however, that although not constitutionally required, the better rule is that the prosecution cannot use a defendant's exercise of his right of confrontation to impeach the credibility of his testimony, at least in the absence of evidence that the defendant has tailored his testimony to fit the state's case.*

Without specific evidence of tailoring, such questions and comments by the prosecution imply that all defendants are less believable simply as a result of exercising the right of confrontation. The exercise of this constitutional right, by itself, is not evidence of guilt. *Because the record contains neither evidence of tailoring nor any other reason for the state's argument, the prosecution's questions and comments were error.*

707 N.W.2d at 657–58 (emphasis added; footnotes omitted).

 Here, we conclude there was sufficient evidence of specific tailoring to justify the prosecutor's argument. During defendant's direct examination, his counsel asked him how he felt when the victim and his friend walked out of the bar. Defendant responded:

I felt threatened by their person following us out of the bar, you know, alone in the parking lot. It was just us. The dude was a third-degree black belt. He brought a giant with him. You know what I mean? They wasn't coming out there to walk and leave and go home at the same time we were. That was too convenient for them.

During cross-examination of the victim's friend, defense counsel had asked whether he had "hauled off and punched one of these folks before they said anything to [him]; isn't that right?" The friend responded, "Well, they were approaching me out of their vehicle. One had a flashlight in his hand. The headlights were on us, and they were ap-proaching us. I was pretty sure, I felt pretty certain they weren't coming just to say hi." Thus, defendant's testimony was similar to the testimony of the victim's friend, explaining why he had felt threatened by defendant and Fernandez and had punched Fernandez first.

Defendant also referred to the testimony of other witnesses. During his direct examination, defense counsel asked defendant, "[J]ust so I'm clear, you never heard Mr. Fernandez offer money to beat the victim?" Defendant responded, "No. That's a false statement. There was no money ever asked. There was no thousand dollars ever to give to anyone to do something that person could have done for free in the first place." But defense counsel had not referred to the amount of money. Defendant added the amount himself, apparently extrapolating it from the testimony of the victim's friend who had referred to "a thousand dollars, a grand," and from the testimony of S.M., who testified that Fernandez had "pulled out some money and said that he would give [her] a G if [she] let him mess [her boyfriend] up."

Also, during direct examination, defendant testified that Fernandez had backed out of the parking space, and "that part about he said we turned around and, they, we just came around to leave the [parking] lot, not to come around—." The victim's friend had previously testified on cross-examination: "I remember seeing a vehicle pull out. I didn't really pay much attention until it whipped around and stopped in front of us."

Similarly, during his direct examination, the victim's friend was asked, "When did the car first come to your attention?" The friend testified, "As we were walking out, we saw the car make a U-turn. It was getting ready to leave the parking complex, and we saw it make a U-turn, and it came back in front of [the victim] and I[sic]."

Then, during defendant's direct examination, his counsel asked, "When Mr. Fernandez was hammering on the victim, did you see what he was hammering on him with?" Defendant said no and explained that his focus was on the friend. Defendant then

added, "He didn't ever drag his friend out of the way and all that. There was never no drag marks from blood, nothing like that."

Because of these and other instances in which defendant's testimony appeared to track the testimony of the prosecution's witnesses, we conclude there was a factual basis for the prosecutor's argument. Accordingly, we perceive no error or abuse of discretion by the trial court in permitting the argument.

## VI. Argument Regarding Defendant's Flight

 Defendant next contends the court erred in permitting the prosecutor to argue during closing that his flight showed his consciousness of guilt. We disagree.

 "In closing argument, counsel may employ rhetorical devices and engage in oratorical embellishment and metaphorical nuance, so long as he or she does not thereby induce the jury to determine guilt on the basis of passion or prejudice, attempt to inject irrelevant issues into the case, or accomplish some other improper purpose." *People v. Allee,* 77 P.3d 831, 837 (Colo.App.2003).

 Whether a prosecutor's statements constitute misconduct or inappropriate prosecutorial argument is generally left to the discretion of the trial court. *Domingo–Gomez v. People,* 125 P.3d 1043, 1049 (Colo. 2005); *Harris,* 888 P.2d at 265 (concluding that a prosecutor's repeated comments referring to the Persian Gulf War and comparing the defendant to Saddam Hussein constituted improper closing argument). "Trial courts have discretion to decide whether a closing argument is improper and, if so, how best to remedy it." *People v. McNeely,* 222 P.3d 370, 373 (Colo.App.2009). Prosecutorial misconduct that misleads a jury can warrant reversal of a conviction. *Harris,* 888 P.2d at 264. If an appellate court concludes that prejudice created by a prosecutor's conduct was so great as to result in a miscarriage of justice, a new trial may be granted notwithstanding the trial court's failure to impose such a sanction. *Id.* at 265.

 Evidence of the defendant's flight may be admissible to show consciousness of guilt if it is shown he was concealing himself to avoid apprehension. *People v. Summitt,* 132 P.3d 320, 325–26 (Colo.2006). *See People v. Fletcher,* 193 Colo. 314, 318, 566 P.2d 345, 348 (1977) (giving a flight instruction is not error when there is proof that the defendant fled or concealed himself for any length of time to frustrate his apprehension); *Robinson v. People,* 114 Colo. 381, 386, 165 P.2d 763, 765 (1946).

Here, the prosecutor made this comment during rebuttal:

> [If defendant] did nothing wrong, why didn't he stay? *He fled. He fled like a guilty person. And you can use that.*
>
> [Defense counsel]: Objection. That's beyond the scope of the law. They cannot consider that. He's not been charged under the law. It's improper argument. It's not rebuttal, either. I didn't mention—
>
> [Prosecutor]: *It's flight. It goes to guilty knowledge.*
>
> [The court]: He's not charged with flight. The jury knows what he's charged with. It's closing argument, and it's not evidence. I would simply remind the jurors again, anything the lawyers tell you is not evidence.

(Emphasis added.) The prosecutor did not discuss the issue further.

In this case, evidence of defendant's flight from the scene of the assault was admitted to show his identity and his consciousness of guilt. Defendant's identity was at issue in the case, and consciousness of guilt is a valid consideration in determining whether the assault was committed by defendant. *See Bernard v. People,* 124 Colo. 424, 426, 238 P.2d 852, 853 (1951).

Furthermore, defense counsel argued during closing that defendant was "the one who stood firm, who did not run," while Fernandez "voted with his feet, ... negotiated a deal and then fled." Hence, it was not improper for the prosecutor to argue that it was reasonable for the jury to infer defendant fled because he had a guilty conscience. *See Roadcap,* 78 P.3d at 1114; *People v. Vialpando,* 804 P.2d 219, 225 (Colo.App.1990) ("A prosecutor is afforded considerable lati-

tude in the right to reply to an argument by opposing counsel.").

The trial court also reminded the jury that defendant was not charged with flight and that counsel's closing arguments were not evidence, *see People v. Moody*, 676 P.2d 691, 697 (Colo.1984), and the prosecutor did not discuss the issue any further.

We therefore conclude that the trial court did not abuse its discretion in permitting the prosecutor to make this argument.

Judgment affirmed.

Judge CASEBOLT and Judge MILLER concur.