The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Gerry Dale ROADCAP, Defendant–Appellant.

No. 01CA0205.

Colorado Court of Appeals, Div. V.

Feb. 13, 2003.

Rehearing Denied April 24, 2003.

Ken Salazar, Attorney General, Catherine P. Adkisson, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Mark G. Walta, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

Defendant, Gerry Dale Roadcap, appeals the judgment of conviction entered upon a jury verdict finding him guilty of second degree murder committed in the heat of passion and a crime of violence. He also appeals his sentence. We affirm.

Evidence was presented at trial that on the morning of August 29, 1999, defendant strangled his wife as she lay on the lawn of their rural trailer home. As the assault proceeded, neighbors called the police.

Subsequently, defendant carried his wife's body to her car and placed it in the driver's seat. Defendant eased himself on top of his wife's body and drove away. One of the neighbors followed defendant as he drove away and related the details of the trip to police. When defendant was apprehended, he exited the car from the passenger side, took a garden tool with him, and screamed at the deputy sheriff to get help for his wife.

A forensic pathologist testified at trial that the wife's cause of death was asphyxia due to manual strangulation. He also testified that there was evidence of a variety of drugs in her system, including alcohol, cocaine, and marijuana.

The police investigation revealed that the wife had been involved in a romantic relationship with an inmate at a nearby federal penitentiary and was planning to visit him, accompanied by her infant daughter, on the day of her death. In the trailer, police found love letters from the inmate and answering machine tapes of two brief conversations between the wife and the inmate only minutes before the wife's death.

At trial, defendant testified that his wife was a substance abuser and had a volatile personality. According to defendant, she threatened to kill him and their baby that morning. He testified that as he picked up the baby and headed to the bedroom, his wife attacked him with an object, striking him on the right side of his head and knocking him to the floor. According to defendant, his wife hit him as he lay on the floor. At some point, defendant heard his infant daughter scream and thought his wife had turned her anger on the baby. Defendant, fearing for his safety, got up and forced his wife outside.

Defendant did not clearly recall what transpired after they exited the trailer. He testified that his wife was attempting to reach for a nearby garden tool and threatened to kill him and the child.

At trial, defendant asserted the affirmative defense of self-defense and defense of others. The jury found him guilty of second degree murder committed in the heat of passion and separately found that defendant had committed a crime of violence. The trial court sentenced defendant to twenty-seven years imprisonment in the Department of Corrections plus a period of mandatory parole. This appeal followed.

## I. Mental Condition Statute

■ Defendant contends the trial court deprived him of his rights to present a defense and to effective assistance of counsel when it ruled that proposed expert testimony concerning the organic roots of his post-incident behavior triggered § 16–8–107(3)(b), which requires notice and compulsory examination when criminal defendants seek to introduce expert testimony relating to their mental conditions. We disagree.

Appellate courts review interpretations of statutes de novo. When construing statutes, a court's primary purpose is to ascertain and give effect to the intent of the General Assembly. *People v. Robertson,* 56 P.3d 121, 123 (Colo.App.2002).

"If courts can give effect to the ordinary meaning of words used by the legislature, the statute should be construed as written, giving full effect to the words chosen, as it is presumed that the General Assembly meant what it clearly said." *State v. Nieto,* 993 P.2d 493, 500 (Colo.2000). Courts should avoid statutory constructions that defeat the clear intent of the General Assembly. *People v. District Court,* 713 P.2d 918, 921 (Colo. 1986).

The statute requiring notice and compulsory examination provides in pertinent part:

Regardless of whether a defendant enters a plea of not guilty by reason of insanity pursuant to section 16–8–103, the defendant shall not be permitted to introduce evidence in the nature of expert opinion concerning his or her mental condition without having first given notice to the court and the prosecution of his or her intent to introduce such evidence and without having undergone a court-ordered examination pursuant to section 16–8–106.

Section 16–8–107(3)(b).

Under a plain language analysis, the statute applies where a defendant seeks to "introduce evidence in the nature of expert opinion concerning his or her mental condition." The statute prohibits introduction of such evidence unless the defendant gives notice to the prosecution and undergoes a court-ordered evaluation. Section 16–8–107(3)(b).

Before trial, defendant gave the prosecution a witness list that included two experts. At a hearing on the prosecution's motion to strike, defendant argued that the proposed expert testimony related to an "organic disorder," rather than any mental condition, and would be presented only to explain his behavior after his wife was killed. Both proposed experts would testify that defendant was suffering from a "dissociative fugue." One expert also would testify that "[defendant's] actions were a response of the limbic system, which is defined as a group of related nervous system structures within the mid-brain that are associated with various emotions and feelings such as anger, fear, sexual arousal, pleasure and sadness."

While defense counsel was careful to refer to the proposed testimony as relating to an organic condition, she agreed that defendant's alleged organic condition affected his mental state and his actions. Further, the condition, dissociative fugue, is listed as a mental illness in the *Diagnostic and Statistical Manual of Mental Disorders* 523 (4th ed.2000).

The trial court thus properly ruled that the expert testimony related to defendant's mental condition and that defendant would have to comply with the provisions of § 16–8–107(3)(b) if he wished to have the experts testify.

Defendant argues the trial court's ruling forced him to forgo calling his expert witnesses. We disagree. The court did not preclude this line of defense, but only required defendant to comply with the statute if he chose to pursue it.

■ In addition, defendant contends the mental condition statute does not apply to the expert testimony concerning his post-incident behavior submitted only to rebut unfavorable inferences drawn from res gestae evidence by the prosecution. Again, we disagree.

By its plain language, § 16–8–107(3)(b) is not limited to evidence of a defendant's condition during the offense, and it contains no exception for evidence of a post-incident condition. Had the General Assembly intended to include such an exception for expert testimony concerning a defendant's post-incident mental condition, it could have easily done so. The statute contains no language that limits its application to evidence of a defendant's mental condition during the commission of the offense.

Thus, we apply the statute as written and conclude it requires notice and compulsory examination when a defendant seeks to introduce evidence of a post-incident mental condition. *See State v. Nieto, supra,* 993 P.2d at 500.

Moreover, the events surrounding his wife's death and defendant's actions afterward were so intertwined that it would not have been feasible for the experts to limit their consideration to only defendant's post-incident behavior. In fact, contrary to his contention, one of his experts specifically indicated that defendant's dissociative fugue likely manifested itself during the early stages of the incident.

■ Defendant also contends that the trial court's ruling placed him in the constitutionally intolerable position of having to choose between his privilege against self-incrimination and his fundamental right to present a defense. We are not persuaded.

First, the trial court's ruling had at most a limited effect on defendant's ability to present his primary defense of self-defense and defense of others. The expert testimony was proposed only to refute the prosecution's anticipated showing that his post-incident conduct demonstrated his guilty knowledge.

Second, as the trial court pointed out, defendant could comply with the statute without waiving his privilege against self-incrimination by invoking the privilege during the court-ordered examination. *See* § 16–8–106(2)(a), C.R.S.2002.

Accordingly, the trial court did not err in ruling that the mental condition statute applied to defendant.

## II. Jury Instruction

Defendant next contends the trial court deprived him of his due process right to a fair trial when it improperly instructed the jury on the initial aggressor exception to the defense of self-defense. More specifically, he asserts there was no evidence he was the initial aggressor. Again, we disagree.

It is the duty of the trial court to instruct the jury on all matters of law. When, as here, a defendant does not object to a jury instruction, a plain error standard applies. "[R]eversal under a plain error standard requires a defendant to 'demonstrate not only that the instruction affected a substantial right, but also that the record reveals a reasonable possibility that the error contributed to [the] conviction.'" *People v. Garcia*, 28 P.3d 340, 344 (Colo.2001)(quoting *Bogdanov v. People*, 941 P.2d 247, 255–56 (Colo.1997)).

Self-defense is an affirmative defense under which a defendant admits doing the act charged, but seeks to justify, excuse, or mitigate his or her conduct. *See People v. Huckleberry*, 768 P.2d 1235, 1238 (Colo.1989); *People v. Whatley*, 10 P.3d 668, 670 (Colo.App.2000). Generally, an initial aggressor is not entitled to assert self-defense. *Idrogo v. People*, 818 P.2d 752, 756 (Colo.1991); *cf.* § 18–1–704(3)(b), C.R.S.2002 (self-defense applicable where initial aggressor withdraws from the encounter and communicates his or

her intent to do so and the other person continues to use force).

A defendant must initiate the physical conflict to be the initial aggressor. *See People v. Beasley*, 778 P.2d 304, 306 (Colo.App.1989). The trial court determines whether there is sufficient evidence to give an instruction concerning an exception to the asserted affirmative defense. *People v. Silva*, 987 P.2d 909, 915 (Colo.App.1999). A trial court should instruct the jury on a principle of law when there is some evidence to support the instruction. *People v. Montoya*, 928 P.2d 781, 783–84 (Colo.App.1996).

Here, in addition to instructing the jury on the use of deadly force in self-defense or defense of others, the trial court instructed the jury on the initial aggressor exception to self-defense; the instruction closely tracked the language of § 18–1–107(2)(a) and (3)(b), C.R.S.2002.

Contrary to defendant's contention, some evidence indicated that he was the initial aggressor. One of the neighbors who witnessed the incident testified that defendant came out of the house, walked toward the back of the house, and "maybe not a minute later" went back inside the house. "A couple of minutes later," the witness saw the victim running out of the house with defendant "running after her and he grabbed her." This evidence would indicate that defendant initiated the fight and that when he briefly went outside he could have grabbed a garden implement used to injure his wife.

Accordingly, we conclude it was not plain error to instruct the jury on the initial aggressor exception to self-defense.

## III. Prosecutorial Misconduct

Defendant contends the prosecution's improper remarks during rebuttal argument were so unfairly prejudicial as to deprive him of his due process right to a fair trial. Defendant alleges five instances of improper rebuttal argument that suggested either he was lying or his defense was not asserted in good faith. We find no reversible error.

A prosecutor may argue the facts in evidence and reasonable inferences from those facts. *People v. Williams*, 996 P.2d

237, 243–44 (Colo.App.1999). Courts evaluate allegations of improper argument by a prosecutor in the context of the argument as a whole and in the light of the evidence presented. *People v. Davalos,* 30 P.3d 841, 844 (Colo.App.2001). A prosecutor has wide latitude to respond to a defendant's "opening salvos" in closing argument. *People v. Vialpando,* 804 P.2d 219, 225 (Colo.App.1990).

▮ Statements by the prosecutor that denigrate defense counsel are improper and constitute professional misconduct. *See People v. Jones,* 832 P.2d 1036, 1038 (Colo.App.1991). It is also improper for a prosecutor to remark that defense counsel knows that the defendant's case is not meritorious. *People v. Ramirez,* 997 P.2d 1200, 1211 (Colo.App.1999), *aff'd,* 43 P.3d 611 (Colo.2001).

▮ Defendant objects to two statements by the prosecutor that defendant and defense counsel were using a smoke screen to divert the jury's attention from the garden tool. Although the reference to defense counsel was arguably inappropriate, *see People v. Jones, supra,* as a whole, the prosecutor's statements were fair comment on the evidence and responded to defense counsel's closing remarks about "red herrings." *See People v. Vialpando, supra.*

▮ Defendant, for the first time on appeal, also objects to three other comments made by the prosecutor. First, defendant alleges the prosecutor improperly referred to going into defendant's "fantasy world." Second, defendant asserts the prosecutor improperly cast doubt on defendant's explanation about carrying his wife's purse to the car. Third, defendant maintains the prosecutor improperly used the word "pathetic" to describe defendant's explanation of how the garden tool was used. These statements were fair comment on the evidence, specifically, defendant's testimony about the events, and did not constitute error. *See People v. Williams, supra.*

Accordingly, we conclude that although one statement was arguably inappropriate, taken together, the statements did not deprive defendant of his right to a fair trial.

## IV. Sentence

▮ Defendant also contends the trial court erred in stating that it had considered the factors set forth in the probation statute before imposing sentence. We do not agree.

▮ Sentencing is by nature discretionary. A trial court has broad discretion in sentencing because of its familiarity with the defendant and the facts of the case. A trial court's decision will not be reversed absent a clear abuse of discretion. *People v. Watkins,* 684 P.2d 234, 239 (Colo.1984). To constitute an abuse of discretion, a trial court's ruling must be manifestly arbitrary, unreasonable, or unfair. *People v. Harris,* 43 P.3d 221, 225 (Colo.2002).

▮ "All relevant factors may be considered to determine which alternative is most appropriate to meet the sentencing goals and policies of deterrence, punishment, rehabilitation, and protection of the public." *Adair v. People,* 651 P.2d 389, 392 (Colo.1982); *see* § 18–1–102.5(1), C.R.S.2002. An appellate court must uphold a sentence that "is within the range required by law, is based on appropriate considerations as reflected in the record, and is factually supported by the circumstances of the case." *People v. Fuller,* 791 P.2d 702, 708 (Colo.1990).

The statute delineating the criteria for granting probation allows the court to sentence a defendant to probation after considering the nature and circumstances of the offense and the history and character of the defendant, unless the court determines that imprisonment would be a more appropriate sentence because of considerations such as the defendant's risk to commit another crime while on probation and his or her need for correctional treatment. Section 18–1.3–203(1)(a)–(e), C.R.S.2002 (formerly § 16–11–203).

▮ The probation statute thus requires the court to consider factors similar to those allowed under the sentencing statute. *Compare* § 18–1.3–203, C.R.S.2002 (criteria for granting probation), *with* § 18–1–102.5 (purpose of criminal code with respect to sentencing).

In imposing sentence, the trial court considered defendant's lack of prior criminal history or history of violence and his stellar military career. However, the court also found defendant acted out of anger and jealousy and his actions had irreversible consequences. Defendant faced an aggravated sentencing range of ten to thirty-two years, *see* § 18–1.3–406, C.R.S.2002, and the trial court sentenced him to twenty-seven years plus a period of mandatory parole. Therefore, the trial court did not abuse its discretion in sentencing. *See People v. Fuller, supra.*

### V. Crime of Violence

■ Finally, defendant contends the trial court erroneously permitted the jury to consider the crime of violence count after it found him guilty of second degree murder committed in the heat of passion and further erred in sentencing him pursuant to § 18–1.3–406. Once again, we disagree.

In *People v. Martinez,* 32 P.3d 582, 584 (Colo.App.2001), a division of this court held that "second degree murder is a *per se* crime of violence, even if committed in the heat of passion." *See also People v. Darbe,* 62 P.3d 1006, 2002 WL 927237 (Colo.App. No. 99CA2521, May 9, 2002)(same).

We find *Martinez* persuasive and follow it here. Defendant was convicted of second degree murder committed in the heat of passion. Thus, he was subject to crime of violence sentencing. Accordingly, we perceive no error.

The judgment and sentence are affirmed.

Judge CASEBOLT and Judge NIETO concur.