**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**David ZUKOWSKI, Defendant–Appellant.**

**No. 09CA0534.**

Colorado Court of Appeals, Div. III.

Oct. 28, 2010.

As Modified on Denial of Rehearing Feb. 3, 2011.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S. 2010.

John W. Suthers, Attorney General, John T. Lee, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Scott H. Robinson, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge BOORAS.

Defendant, David Zukowski, appeals the judgment of conviction entered on jury verdicts finding him guilty of first degree assault and third degree criminal trespass. In this appeal, defendant challenges only his first degree assault conviction. We reverse and remand.

## I. Background

On June 13, 2007, at approximately 1 a.m., defendant entered the condominium of his neighbor across the hallway (the victim). The victim confronted defendant, and defendant left the victim's condominium but returned a few minutes later and jiggled the victim's doorknob. The victim opened the door and saw defendant walking back to his own condominium. The victim followed defendant into defendant's condominium. Defendant emerged from his bedroom swinging a machete at the victim, causing wounds to the victim's head and torso.

Defendant moved to dismiss the first degree assault charge, seeking immunity pursuant to section 18–1–704.5, C.R.S.2010 (the make-my-day statute).

After a pretrial immunity hearing, the trial court denied defendant's motion, concluding

that defendant failed to prove by a preponderance of the evidence that he was entitled to immunity. At trial, defendant asserted the make-my-day statute as an affirmative defense.

The jury found defendant guilty of first degree assault and third degree criminal trespass. The trial court sentenced him to twenty-one years imprisonment in the custody of the Department of Corrections, plus a period of mandatory parole. This appeal followed.

## II. Law Applicable to Jury Instructions

■ A trial court has a duty to instruct the jury correctly on the applicable law. *People v. Pahl,* 169 P.3d 169, 183 (Colo.App. 2006). We review jury instructions de novo to determine whether the instructions accurately informed the jury of the governing law. *People v. Lucas,* 232 P.3d 155, 162 (Colo.App.2009); *People v. Oram,* 217 P.3d 883, 893 (Colo.App.2009) *(cert. granted on other grounds* Oct. 13, 2009). Reversible error occurs if the language of the jury instructions creates a reasonable probability that the jury could have been misled in reaching a verdict. *People v. Garcia,* 28 P.3d 340, 344 (Colo.2001).

■ The trial court has substantial discretion in formulating the jury instructions so long as they are correct statements of the law and fairly and adequately cover the issues presented. *Pahl,* 169 P.3d at 183; *People v. Silva,* 987 P.2d 909, 915 (Colo.App. 1999) (a conviction will not be reversed on a claimed deficiency in a jury instruction if the instructions, read as a whole, adequately inform the jury of the law).

■ In preparing jury instructions, the trial court should generally abstain from giving abstract statements of law or taking language out of context from cases or unrelated statutes. *People v. Jurado,* 30 P.3d 769, 771 (Colo.App.2001). However, jury instructions framed in the language of statutes are usually adequate and proper. *People v. Burke,* 937 P.2d 886, 890 (Colo.App.1996).

## III. Make–My–Day Affirmative Defense Jury Instruction

Defendant contends the trial court erred in instructing the jury, over his objection, that the make-my-day affirmative defense did not apply if the victim's entry into defendant's condominium was in good faith or if the victim did not know he was violating the criminal law when he entered defendant's condominium. We agree.

The make-my-day statute provides:

Notwithstanding the provisions of section 18–1–704 [concerning self-defense], any occupant of a dwelling is justified in using any degree of physical force, including deadly physical force, against another person when that other person has made an unlawful entry into the dwelling, and when the occupant has a reasonable belief that such other person has committed a crime in the dwelling in addition to the uninvited entry, or is committing or intends to commit a crime against a person or property in addition to the uninvited entry, and when the occupant reasonably believes that such other person might use any physical force, no matter how slight, against any occupant.

§ 18–1–704.5(2), C.R.S.2010.

■ Thus, the make-my-day statute has three elements: (1) an unlawful entry, (2) the occupant's reasonable belief that the person entering unlawfully has committed, is committing, or intends to commit a crime, and (3) the occupant's reasonable belief that the person entering unlawfully might use physical force against an occupant.

Instruction No. 15 provided:

It is an affirmative defense to the crime of Assault in the First Degree and Assault in the Second Degree that the defendant used any degree of physical force, including deadly force, against an intruder when:

1. the defendant was an occupant of a dwelling, and

2. the other person made an unlawful entry into that dwelling, and

3. the defendant has a reasonable belief that the other person had committed a crime in the dwelling in addition to the unlawful entry, or was committing or in-

tended to commit a crime in the dwelling in addition to the unlawful entry, and

4. the defendant reasonably believed the other person might use any physical force, no matter how slight, against any occupant in the dwelling.

In order for this affirmative defense to apply, *the other person's unlawful entry into the dwelling must have been made in knowing violation of the criminal law. An entry made in the good faith belief that it is lawful, is not an entry made in knowing violation of the criminal law.* It is the prosecution's burden to prove beyond a reasonable doubt that the other person's unlawful entry into the dwelling was not made in knowing violation of the criminal law and was made in good faith.

In addition to proving all of the elements of the crime charged beyond a reasonable doubt, the prosecution also has the burden to disprove the affirmative defense beyond a reasonable doubt.

After considering all the evidence, if you decide the prosecution has failed to disprove beyond a reasonable doubt any one or more elements of the affirmative defense, you must return a verdict of not guilty.

(Emphasis added.)

The language defendant contends was error is not present in the pattern jury instruction on use of deadly physical force against an intruder. CJI–Crim. 7:20.5 (1993).

### A. Entry Made in Knowing Violation of the Criminal Law

In *People v. McNeese*, 892 P.2d 304, 311 (Colo.1995), our supreme court construed the make-my-day statute and concluded that the unlawful entry element requires a culpable mental state of "knowingly" on the part of the intruder. "[A]n unlawful entry means a knowing, criminal entry into a dwelling." *Id.* at 310.

Here, a portion of Instruction No. 15 stated, "the other person's unlawful entry into the dwelling must have been made in knowing violation of the criminal law." This language is misleading in that it could be taken to mean that an intruder must know his or her conduct would violate a criminal statute, which goes farther than the *McNeese* requirement of a "knowing, criminal entry." Although the *McNeese* court used the phrase "in knowing violation of the criminal law," *id.*, it appears that the phrase was intended to express a requirement that an intruder must knowingly engage in criminal conduct, not that an intruder knows he or she is violating a criminal statute. *Id.* at 310–11 ("The statutory language justifies an occupant's use of physical force against another person when the other person is knowingly engaging in criminal conduct."); *see also* § 18–4–201(3), C.R.S.2010 (as used in title 18, article 4, "[a] person 'enters unlawfully' or 'remains unlawfully' in or upon premises when the person is not licensed, invited, or otherwise privileged to do so"). The *McNeese* court used the phrase "in knowing violation of the criminal law" in the context of proof of the "knowingly" culpable mental state for an unlawful entry, and not as a separate justification for entry.

While a separate instruction, Instruction No. 22, defined "unlawful entry" as "an entry upon premises by a person who is not licensed, invited, or otherwise privileged to do so," the "in knowing violation of the criminal law" language was additional to the requirement of an unlawful entry. Thus, the definition in Instruction No. 22 did not remedy the incorrect language in Instruction No. 15.

Here, the prosecution promoted an incorrect interpretation of the statutory requirements by arguing (1) that the phrase "in knowing violation of the criminal law" meant that the victim "had to know he was violating a criminal law," (2) that he did not "knowingly break a law," and (3) that the victim "had a good faith belief that he was not knowingly breaking the law when he went in there." This argument suggests that an intruder must know that his or her conduct violates a criminal statute, rather than that the intruder must not have a reasonable belief that his or her entry is licensed, invited, or otherwise privileged.

Thus, while it would not be error to instruct a jury on the mental culpability required for the intruder, here the language

used could have misled the jury, and was therefore erroneous.

### B. Entry Made in the Good Faith Belief That It Is Lawful

*McNeese* does not contain the language used by the trial court here, "An entry made in the good faith belief that it is lawful, is not an entry made in knowing violation of the criminal law." The *McNeese* court recognized that an intruder may act under a mistaken belief of fact that he or she was invited onto the premises, and that this type of entry would not be unlawful under the make-my-day statute. The court observed:

> The statute was enacted to immunize the occupant of a dwelling from prosecution for using physical force against another person who has committed, is committing, or intends to commit criminal acts in the dwelling. Immunity from criminal prosecution provides protection to the occupant of a dwelling who uses force against an intruder who has knowingly and unlawfully entered the dwelling to commit a crime. The immunity was not intended to justify use of physical force against persons who enter a dwelling accidently or in good faith.

*McNeese*, 892 P.2d at 311.

Subsequently, in *People v. Janes*, 982 P.2d 300 (Colo. 1999), the supreme court addressed an instruction that provided that the "make my day" defense "is not available if the victim entered the apartment in good faith belief he was making a lawful entry." *Id.* at 303. Although the court noted that the instruction "accurately tracks the language of *People v. McNeese* in an attempt to define the term 'unlawful entry,'" *id.*, the court did not expressly approve this language since the issue it was addressing was whether the instruction correctly stated the applicable burden of proof. *See id.* at 305 (Scott, J., concurring)(the judgment in *Janes* "neither reaches the issues addressed nor reaffirms the judgment rendered in *People v. McNeese*").

The problem with the good faith language in Instruction No. 15 is that "good faith" was not defined, and allowed an interpretation that an entry would not be unlawful under the make-my-day statute if an intruder, who understands that he or she is uninvited or unlicensed, has a "good faith" but mistaken belief that he or she can lawfully be on the premises.

An actual unlawful entry is required under *McNeese*. *Id.* at 310. A mistaken belief that an entry, although uninvited, is lawful does not make it lawful.

Further, we are concerned that inserting a broad good faith exception into the "unlawful entry" element would go against public policy. The make-my-day statute requires that the occupant have a reasonable belief that the intruder has committed, or intends to commit, a crime in the dwelling. *Id.* at 313. By allowing an intruder to have a mistaken, but good faith belief that entry is lawful, the onus is placed on the occupant to determine whether the intruder's entry is in good faith before acting in self-defense. Requiring such a determination by the occupant may conflict with the occupant's right to act on his or her reasonable belief that the intruder is committing or intends to commit a crime. § 18–1–704.5(1), C.R.S.2010 ("The general assembly hereby recognizes that the citizens of Colorado have a right to expect absolute safety within their own homes.").

Here, the prosecution argued that the victim was not knowingly violating the criminal law because he wanted to converse with defendant to make him stop knocking on the victim's door, and the victim "had a good faith belief that going over there was the absolute right thing to do and that under the circumstances he had an absolute right to do so." Because the instruction in this case did not limit or define "good faith," it allowed the view that an intruder's broad subjective belief that he or she had a right to enter another person's home might make that entry lawful.

Accordingly, we conclude that the instruction in this case was error, and defendant is entitled to a new trial on the charge of first degree assault.

### IV. Other Issues

Because other issues raised by defendant are likely to arise again on retrial, we address them here.

## A. Issue Preclusion and Law of the Case Doctrines

■ Defendant contends the doctrine of issue preclusion barred the "unlawful entry" jury instruction at trial because the court found that the victim's entry was unlawful at the immunity hearing. We disagree.

■ Issue preclusion bars relitigation between the same parties of issues actually determined at a previous trial. *Williamsen v. People*, 735 P.2d 176, 182 (Colo.1987). Four elements are required for issue preclusion: (1) the issue sought to be precluded must be identical to an issue actually and necessarily decided at a prior proceeding; (2) there must have been a final judgment on the merits at the first proceeding; (3) there must be identity of parties or privity between the parties against whom the doctrine is asserted; and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding. *Id.* Only the "final judgment" element is at issue here.

At the immunity hearing, the trial court concluded:

> Given the standard the Court applies, the preponderance of the evidence, the Court would find that [the victim] entered unlawfully into the Defendant's dwelling. He did not have permission to enter, and he entered for—he entered for the purpose of at least talking to the roommate, and perhaps the Defendant as well, about the two instances that transpired in his own apartment on June 6th and June 13th.

> The Court would find it was uninvited, and even though it's very close, the Court would find by a preponderance of the evidence that the entrance was unlawful at the time he entered the Defendant's apartment.

Prior to trial, defendant sought an order from the trial court, requesting that its finding that the victim's entry was unlawful be binding at trial for the purposes of his make-my-day affirmative defense. The court denied his motion, concluding:

> Well, as both sides indicated, the concern of the Court, and certainly what's being argued, is whether or not the third prong, if you will, of issue preclusion there was a final judgment on the merits on the issues; and, again, I looked at the cases cited by counsel and some others as well, and the Court would find, again, there's nothing directly on point, but the Court would find that my finding that has been alluded to was a close call, but the finding that the entry of [the victim] was unlawful is not a final judgment for purposes of trial.

> Certainly, it was part of my ruling in terms of the make my day analysis, and I did find that the—his entrance into the defendant's condo was unlawful; and, obviously, that—that impacted whether or not there was a dismissal. But when we get to trial, we have a different burden here. It now is an affirmative defense, and the burden is on the prosecution now to disprove the four elements of make my day by proof beyond a reasonable doubt. And I just—I don't see how we can tease out or separate out one of the four elements of the make my day statute and say, well, the jury is precluded from considering this, because, again, we're in a trial posture. We have different evidence being presented, and we all know a trial never is—is not going to be exactly the same as was the motions hearing in the way the issues and facts are developed.

■■ The make-my-day statute creates an immunity defense when raised before trial as well as an affirmative defense when raised at trial. *James*, 982 P.2d at 303.. At the pretrial stage, the defendant must prove by a preponderance of the evidence, among other elements, that the victim knowingly made an unlawful entry. *Id.* at 302. However, at trial, the burden of proof shifts to the prosecution to prove beyond a reasonable doubt that the victim's entry was lawful. *Id.* at 302–03. Because of the differences in the procedure and burdens of proof in an immunity hearing and at trial, "issue preclusion does not prevent the independent resolution of the same issue in each proceeding." *Meyer v. State*, 143 P.3d 1181, 1186 (Colo.App.2006)(ruling regarding probable cause or reasonable suspicion in criminal case was not binding in license revocation hearing).

Further, although at the immunity hearing the trial court found unlawful entry by the victim, it denied defendant's motion to dismiss the first degree assault charge. An order denying such a motion is not final when pronounced. *People v. Wood*, 230 P.3d 1223, 1226 (Colo.App.2009)(*cert. granted* May 10, 2010)(a defendant may not appeal the denial of his motion for dismissal under the make-my-day statute).

We are further unpersuaded by defendant's assertion that the law of the case doctrine precluded the trial court from submitting the "unlawful entry" by the victim question to the jury. A trial court, in its discretion, may decline to apply the doctrine if it determines that the previous decision is no longer sound because of changed conditions or law, or legal or factual error, or if the prior decision would result in manifest injustice. *Vashone–Caruso v. Suthers*, 29 P.3d 339, 342 (Colo.App.2001). Here, as the trial court noted, the conditions changed after it denied defendant's motion to dismiss. At trial, the burden of proof was heightened to a beyond a reasonable doubt standard and was shifted to the prosecution.

Accordingly, we conclude it was not error to submit the "unlawful entry" issue to the jury.

### B. Initial Aggressor and No Retreat Jury Instructions

Defendant next contends the trial court erred by (1) instructing the jury about the initial aggressor exception when no evidence supported that he was the initial aggressor and (2) refusing his tendered instruction on the doctrine of no retreat to include a right to use "deadly" force. We disagree.

Instruction No. 16 provided, in relevant part:

(1) Except as provided in paragraph (2) of this instruction, it is an affirmative defense to the crime of First Degree Assault that the defendant used physical force upon another person:

(a) in order to defend himself or a third person from what he reasonably believed to be the use or imminent use of unlawful physical force by the other person, and

(b) he used a degree of force which he reasonably believed to be necessary for that purpose. Defendant was not required to retreat to a position of no escape in order to claim the right to employ force in his own defense.

(2) It is not an affirmative defense that the defendant used physical force upon another person as set out in paragraph (1) of this instruction if the defendant was the initial aggressor, unless:

(a) the defendant withdrew from the encounter, and

(b) effectively communicated to the other person his intent to do so, and

(c) the other person nevertheless continued or threatened the use of the unlawful physical force.

### 1. Initial Aggressor

A defendant must initiate the physical conflict to be the initial aggressor. *People v. Roadcap*, 78 P.3d 1108, 1113 (Colo. App.2003). The trial court determines whether there is sufficient evidence to give an instruction concerning an exception to the asserted affirmative defense. *Id.* A trial court should instruct the jury on a principle of law when there is some evidence to support the instruction. *Id.*

Here, some evidence indicated that defendant could have been the initial aggressor. The victim testified that (1) defendant entered the victim's condominium uninvited twice on June 13, 2007; (2) defendant kept knocking on and jiggling the victim's door after the victim ushered him out the second time; and (3) the victim was concerned about how defendant was getting into the condominium. Further, both the victim and defendant testified that when the victim followed defendant into defendant's condominium, defendant emerged from the bedroom, swinging a machete at the victim. *Compare People v. Lara*, 224 P.3d 388, 396–97 (Colo.App. 2009) (court should not have instructed on the initial aggressor exception to defense of a person where defendant and his gang exchanged insults with rival gang, but their conduct did not constitute physical aggression), *with Roadcap*, 78 P.3d at 1113 (evi-

dence that defendant walked out of house, went back inside a couple of minutes later, and ran after victim fleeing from the home supported an inference that defendant initiated the fight).

### 2. Doctrine of No Retreat

■ Colorado follows the doctrine of no retreat, which permits nonaggressors who are otherwise entitled to use physical force in self-defense to do so without first retreating or seeking safety by means of escape. *Cassels v. People*, 92 P.3d 951, 956 (Colo.2004).

Here, in the self-defense instruction, the trial court instructed the jury about the doctrine of no retreat. *See id.* (a defendant is entitled to a jury instruction on the doctrine of no retreat when the facts of the case raise the issue of retreat and the evidence supports a jury finding that the defendant was not the initial aggressor).

Nonetheless, defendant asserts that the trial court should have instructed the jury as to his right to use "deadly" force. We discern no abuse of discretion by the trial court. Defendant's tendered instruction and the instruction submitted to the jury are nearly identical. Further, the instruction given to the jury adequately apprised the jury of the doctrine of no retreat.

Accordingly, we conclude that it was not error to instruct the jury on initial aggressor and the doctrine of no retreat.

### C. Refused Jury Instructions

Lastly, defendant contends that the trial court erred by refusing his tendered scope of invitation and apparent necessity instructions. We disagree.

■ Whether additional written jury instructions may be given which properly state the law and fairly and adequately cover the issues presented is a matter committed to the sound discretion of the trial court. *Burke*, 937 P.2d at 890. The resolution of issues committed to the discretion of the trial court will not constitute reversible error absent manifest prejudice or a clear showing of abuse of discretion. *Id.*

### 1. Scope of Invitation

■ At trial, defendant tendered the following instruction on scope of invitation, which was rejected by the trial court:

A person enters unlawfully or remains unlawfully in or upon premises where the person is not licensed, invited, or otherwise privileged to do so. Any entry upon premises for purposes outside of a prior invitation is likewise an unlawful entry.

Here, Instruction No. 22 stated: " 'Unlawful entry' means an entry upon premises by a person who is not licensed, invited, or otherwise privileged to do so." This instruction conforms to the language in section 18–4–201(3), *see People v. Grenier*, 200 P.3d 1062, 1080 (Colo.App.2008) (a jury instruction tracking the language of the statute is generally considered to be sufficient), and permitted defendant to argue that even if the victim was once invited, this entry was not within the scope of that invitation.

### 2. Apparent Necessity

■ At trial, defendant tendered the following instruction on apparent necessity, which was also rejected by the trial court:

In deciding the issue of self-defense and defense against an intruder, you should consider the facts and circumstances as they appeared to the defendant, David Zukowski, at the time of his actions, in order to decide whether he acted as a reasonable person would have acted under the same or similar circumstances. A person is entitled to act upon appearances to avoid apprehended danger, and even the use of deadly physical force is justifiable if there appears to be a legal basis for using deadly force even if it turns out later that the appearances were false and there was little or no danger of actual physical injury to the defendant.

■ It is unnecessary to give an instruction that is encompassed by other instructions provided by the court. *Id.* Here, Instruction No. 15 encompassed defendant's tendered "apparent necessity" instruction because it informed the jury that defendant was entitled to defend himself if he "reasonably believed" that the victim might use un-

lawful physical force against him even if the appearance of physical force by the victim was slight. *Beckett v. People,* 800 P.2d 74, 78 (Colo.1990) (a separate apparent necessity instruction is not necessary where jury instructions adequately informed the jury that it was required to consider the defendant's reasonable belief in the "necessity of defensive action").

Accordingly, we conclude that the trial court did not err in refusing defendant's scope of invitation and apparent necessity jury instructions.

The judgment of conviction of first degree assault is reversed, and the case is remanded for a new trial on that charge.

Judge ROMÁN and JUDGE NIETO * concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2010.