23CA1087 Peo v Brown 06-25-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1087
El Paso County District Court No. 21CR4112
Honorable Samuel Evig, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

John Caina Brown,

Defendant-Appellant.

---

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE GROVE
Gomez and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 25, 2026

---

Philip J. Weiser, Attorney General, Sonia Raichur Russo, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Mark Evans, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, John Caina Brown, appeals his judgment of conviction entered after a jury found him guilty of sexual assault on a child by one in a position of trust (SAOC – POT) with a victim less than fifteen years old as part of a pattern of sexual abuse, aggravated incest, and child abuse. We affirm but remand the case so the district court may correct the mittimus.

## I.    Background

¶ 2    Sixteen-year-old A.B. disclosed to a mandatory reporter that her father, Brown, had shaved her vagina with an electric razor. The disclosure led to an investigation, and law enforcement interviewed A.B. multiple times about her allegation.

¶ 3    In the interviews, A.B. said that, on three or four separate occasions occurring over the course of a year when she was about fourteen years old, Brown shaved her vagina with an electric razor. The first time it happened, A.B. had finished showering when Brown, who was intoxicated, walked into the bathroom and told her to put her leg up on the toilet or the tub so he could shave her. A.B. reported she was mostly or entirely naked and cried during the shaving, but that Brown said a doctor told him to do it. Brown stopped when there was no more hair and then put some cream on

A.B.'s hands and told her to apply it to herself.  Two or three similar incidents followed, but Brown stopped when A.B. told him she could do it on her own.  A.B. additionally reported that Brown urged her to tell law enforcement that he had never shaved her.[1]

¶ 4     A.B. then mentioned two other incidents with Brown.  In the first, she described Brown slapping her face after she intervened in a physical fight between him and his girlfriend.  The slap left a visible red mark.  In the second, A.B. described Brown chasing her upstairs to her bedroom after she talked back.  A.B. said that Brown hit her with his fist or slammed her against the wall, leaving her with a black eye, a photo of which A.B. turned over to law enforcement.

¶ 5     After law enforcement gathered evidence, a detective interviewed Brown.  During the interview, he denied shaving A.B.'s vagina.  Instead, he said that he had once shown a clothed A.B. how to shave her legs after she asked for his help.  He insisted that he demonstrated only on the bottom part of one leg.  He also denied

---

[1] In addition to A.B.'s report, Brown told A.B. to deny the shaving incidents during a phone call made by A.B. as part of the investigation.

2

that the other two incidents occurred and denied coaching A.B. on what to tell police.

¶ 6     After a trial, the jury found Brown guilty of one count of SAOC – POT (victim under fifteen, pattern), aggravated incest, and child abuse.  However, the mittimus indicates that he was convicted of four total charges: one count of SAOC – POT (victim under fifteen, pattern), one count of SAOC – POT (victim under fifteen), aggravated incest, and child abuse.

¶ 7     Brown now appeals, arguing that the court (1) erroneously instructed the jury on the definition of "sexual abuse"; (2) made evidentiary errors and allowed prosecutorial misconduct; and (3) included on the mittimus a charge never submitted to the jury. The People concede, and we agree, that there is an error on the mittimus, so we remand the case so that the mittimus may be corrected.  Otherwise, we affirm.

## II.    Jury Instructions

¶ 8     Brown contends that the district court erred when it instructed the jury on the definition of "sexual abuse."  We disagree.

## A.    Standard of Review

¶ 9    A district court has a duty to accurately instruct the jury on the governing law. *People v. Pahl*, 169 P.3d 169, 183 (Colo. App. 2006). We review de novo whether the district court accurately instructed the jury. *People v. Zukowski*, 260 P.3d 339, 343 (Colo. App. 2010).

## B.    Applicable Law

¶ 10    SAOC – POT (victim under fifteen, pattern) and aggravated incest both require proof that a defendant knowingly subjected the victim to "sexual contact." § 18-3-405.3(1), (2)(a), (b), C.R.S. 2025; § 18-6-302(1)(a), C.R.S. 2025. "Sexual contact" means the "knowing touching of the victim's intimate parts by the actor . . . if that sexual contact is for the purposes of sexual arousal, gratification, or abuse." § 18-3-401(4)(a), C.R.S. 2025.

¶ 11    "Abuse," as it appears in section 18-3-401(4)(a), is not defined either by statute or in the model jury instructions. *See People v. Espinosa*, 2020 COA 63, ¶ 26; COLJI-Crim. F:337 (2025). Appellate case law, however, has clarified the parameters of that term. *See People v. Lovato*, 2014 COA 113, ¶ 32 (recognizing that, in the context of the phrase "sexual arousal, gratification, or abuse," the

word "abuse" means "sexual abuse," but nevertheless holding that such abuse does not require a "sexual motivation" on the part of the perpetrator); *see also Espinosa*, ¶¶ 7, 20-21, 25-26 (holding that, where the trial court defined "sexual abuse" in part as "behavior done with an intent to cause pain, injury, or discomfort . . . [which] can be either of a physical or an emotional nature," that part of the instruction correctly stated the law, but concluding that another part of the same instruction saying that the perpetrator's motive was irrelevant was erroneous).

### C.   Applicable Facts

¶ 12    During the jury instruction conference, the court and counsel discussed whether to instruct the jury on the meaning of "abuse" under section 18-3-401(4)(a), which, as we have indicated, provides that "sexual contact" means "[t]he knowing touching of the victim's intimate parts by the actor . . . if that sexual contact is for the purposes of sexual arousal, gratification, or abuse." The defense objected to giving an instructional definition at all. While acknowledging appellate case law holding that the term "sexual" in the statute modifies "abuse," *see Lovato*, ¶¶ 16-19, defense counsel

5

argued that the court should not define the term unless the jury asked for clarification.

¶ 13    Concerned that, left to their own devices, the jurors would not "realiz[e] [that] the word 'sexual' modifies each of the terms after it" — a result that would substantially broaden the scope of the instruction — the court decided to provide a definition of "sexual abuse" notwithstanding defense counsel's objection. Based on *Lovato* and *Espinosa*, the court crafted the following instruction:

> "SEXUAL ABUSE" means any act committed for the purpose of causing sexual humiliation, sexual degradation, or other significant physical or emotional discomfort of a sexual nature. Such abuse does not require sexual arousal or gratification on the part of the actor.

### D.    Analysis

¶ 14    Brown contends that the court reversibly erred by defining "sexual abuse" for the jury for four reasons: (1) the instruction was based on case law, *see Evans v. People*, 706 P.2d 795, 800 (Colo. 1985) (discouraging "[l]anguage used in an opinion" to craft jury instructions because such language often relates to the specific facts and issues of that case (citation omitted)); (2) the instruction relied on dicta from *Lovato* and *Espinosa*; (3) by defining "sexual

6

abuse" instead of simply "abuse," the court signaled that "any act —
no matter how de minimis — was sufficiently 'sexual' to satisfy the
definition of sexual contact"; and (4) the definition the court
provided was "unanchored to the plain meaning of the word
'abuse.'"

¶ 15     We perceive no error. As the district court recognized, caution
is certainly warranted when basing an instruction on case law, but
there is no inherent error in doing so. *See Espinosa*, ¶ 15. Relying
on dicta is even riskier, but the touchstone of proper jury
instructions is legal accuracy, not sourcing. *See Pahl*, 169 P.3d at
183 ("[T]he trial court has substantial discretion in formulating the
jury instructions so long as they are correct statements of the law
and fairly and adequately cover the issues presented."); *cf. Garcia v.
People*, 2019 CO 64, ¶ 22 (noting that the Colorado Model Criminal
Jury Instructions "are not a safe harbor that insulates instructional
error from reversal").

¶ 16     The district court used *Lovato* and *Espinosa* as guidance
rather than quoting from either case directly. As the court
explained, it was important for the jury to understand that it would
need to determine whether any abuse that Brown committed had a

7

"sexual component." *See Lovato*, ¶¶ 30-31. In the same vein, the instructional definition properly required the jury to determine whether the prosecution had proved that Brown acted with "the purpose of causing sexual humiliation, sexual degradation, or other significant physical or emotional discomfort of a sexual nature" while simultaneously clarifying that "sexual arousal or gratification on the part of the actor" was not a requirement. *See Espinosa,* ¶ 21.

¶ 17    We are unpersuaded by Brown's argument that the instruction departed from the plain meaning of "abuse." Brown contends that the instruction defined "abuse" more broadly than the word's plain meaning because it allowed for "any level of 'humiliation' or 'degradation.'" But as the *Espinosa* division noted, "[i]n the legal context," the definition of abuse includes "[c]ruel or violent treatment of someone; specif[ically], physical or mental maltreatment, often resulting in mental, emotional, sexual, or physical injury." *Id.* at ¶ 13 (quoting Black's Law Dictionary 12 (11th ed. 2019)). The definition provided by the court in this case, which tracked *Espinosa* closely, appropriately "encompass[ed] both physical and emotional pain, injury, or significant discomfort." *Id.*

### III.  Expert Testimony

¶ 18    Brown next contends that an expert witness for the prosecution improperly bolstered A.B.'s credibility.  Although the opening brief is framed in terms of prosecutorial misconduct — presumably arising from the prosecutor's questions and some characterizations of the expert testimony during closing — the more developed argument focuses on the expert's answers — asserting that the court committed plain error by failing to limit the scope of the expert's testimony.  Ultimately, it makes no difference whether Brown's argument is viewed through the lens of prosecutorial misconduct or evidentiary error because, as we explain below, neither the prosecutor's questions nor the expert's answers amounted to improper bolstering.[2]

---

[2] Brown quotes two excerpts of the prosecutor's closing argument, suggesting that the prosecutor committed misconduct by referring back to expert testimony that, he maintains, was admitted for the purpose of improperly bolstering A.B.'s credibility.  But he does not explain why these particular statements were improper, much less why they would require reversal under the plain error standard.  We therefore do not address the propriety of the prosecutor's closing argument further.  *See People v. Stone*, 2021 COA 104, ¶ 52 (declining to address undeveloped appellate argument).

## A.    Applicable Law and Standard of Review

¶ 19    When reviewing claims of prosecutorial misconduct, we engage in a two-step analysis. *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010). First, we determine whether the conduct at issue was improper and, second, if any misconduct warranted reversal. *Id.* We determine if the conduct was improper based on the totality of the circumstances. *Id.* If we determine that a prosecutor's statements were improper, we consider whether the improper statements warrant reversal under the applicable standard of review. *Id.*

¶ 20    Whether a prosecutor has engaged in misconduct is an issue within the trial court's discretion, *People v. Rhea*, 2014 COA 60, ¶ 42, and where, as here, plain error review applies because the defense did not lodge a timely objection at trial, we reverse "only when an error so undermines the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the jury's verdict." *Domingo-Gomez v. People*, 125 P.3d 1043, 1053 (Colo. 2005).

¶ 21    A properly qualified expert witness may testify as to the typical demeanor and behavioral traits displayed by a sexually abused child because such testimony "assists the jury in understanding the

victim's behavior after the incident — why the victim acted the way he or she did." *People v. Relaford*, 2016 COA 99, ¶ 28. A generalized expert's "testimony about children's general characteristics and their behavior is not the same as [impermissible] testimony supporting the veracity of their statements." *People v. Whitman*, 205 P.3d 371, 382-83 (Colo. App. 2007).

¶ 22 But still, expert witnesses are "prohibited from testifying that another witness is telling the truth on a particular occasion." *Venalonzo v. People*, 2017 CO 9, ¶ 32 (citing *People v. Wittrein*, 221 P.3d 1076, 1081 (Colo. 2009)). "This rule applies to both direct and indirect implications of a child's truthfulness." *Id.* (citing *Wittrein*, 221 P.3d at 1082). "The danger in admitting such testimony lies in the possibility that it will improperly invade the province of the fact-finder." *Id.* (citing *People v. Newbrough*, 803 P.2d 155, 163 (Colo. 1990)).

### B. Applicable Facts

¶ 23 Sue Wich, endorsed by the prosecution as an expert in child sexual assault, victim/offender dynamics, and victim response to

trauma, testified as a generalized expert at trial. She had no knowledge of the specific facts of Brown's case.

¶ 24    During direct examination, the prosecutor asked Wich a series of questions about the behavior of victims and offenders who are in sexual abuse situations.

¶ 25    The prosecutor first asked if it was common for a victim to share more details about traumatic events over time.

> [PROSECUTOR]: Now, is [sharing more details about a traumatic event over time] necessarily a reflection on the credibility of the victim who is — who has suffered that trauma?
>
> [WICH]: No . . . . Again, that's a common dynamic with people who are substantiated victims with an offender who is acknowledging their offenses. So it's really a function of memory and coping mechanisms that the victim has engaged in to kind of preserve themselves.

¶ 26    The prosecutor next asked Wich about offenders normalizing their own behavior.

> Q: Would it be consistent with that concept if, for example, an offender told his victim that the reason he was abusing her was because he got instructions from a doctor to do so?
>
> A: Yes . . . . Plausible deniability, classic.

¶ 27    He then asked Wich about a victim's demeanor while testifying.

> Q: If a victim were to present on the stand in kind of a stoic manner and sometimes get annoyed with the questions that were being asked, would that necessarily, to you, indicate a diminished credibility?
>
> A: No.  No.  I think many victims who respond with that kind of anger and indignation that they would be questioned about this again, but once again someone is trying to prove them to be a liar, and you have to have kind of a great deal of stoicism to overcome that dynamic. And I think that is one of the presentations of someone who is struggling with that.

### C.    Analysis

¶ 28    Although some of the prosecutor's questions were perhaps inartful, they did not elicit any improper testimony from the expert. For example, it was not improper to inquire generally about the behavior of child sexual assault victims.  *See People v. Glasser*, 293 P.3d 68, 78 (Colo. App. 2011) (testimony about whether a sexual assault victim's behavior or demeanor was consistent with the typical behavior of abuse victims is permitted).  Nor was it improper to elicit answers that only incidentally corroborated A.B.'s testimony.  *See Relaford*, ¶ 31 (This type of evidence is permissible

13

because it "(1) relates to an issue apart from credibility and (2) only incidentally tends to corroborate a witness's testimony." (citation omitted)). And to the extent that Wich spoke generally about a sexual assault victim's expected demeanor while testifying, the prosecutor did not ask her to opine on whether A.B. herself was credible, and Wich did not offer such an opinion. *See People v. Short,* 2018 COA 47, ¶ 14 ("This evidence does not say whether the child was or was not lying on a specific occasion; instead, it explains why a jury should not necessarily disbelieve a child because of circumstances that, in a different context, would discredit the child's story.").

¶ 29   To be sure, one of the prosecutor's questions — about an offender normalizing their abuse under the guise of following a doctor's orders — came closer to the line because it asked Wich to opine on the precise facts of this case. But we cannot conclude that any error was plain. Divisions of this court have repeatedly upheld hypothetical questions involving the facts of a case at hand. See, e.g., Short, ¶¶ 13-20; People v. Morrison, 985 P.2d 1, 2-6 (Colo. App. 1999), aff'd, 19 P.3d 668 (Colo. 2000); People v. Mintz, 165 P.3d 829, 831-32 (Colo. App. 2007). Similar to the experts in Short,

14

Morrison, and Mintz, the prosecution's expert in this case testified without knowledge of the case's particular facts. See, e.g., Short, ¶ 18; cf. Venalonzo, ¶¶ 35-38 (holding it was improper for an expert who directly interviewed the victims to specifically state that the victim's behaviors were common to other child sex assault victims she had interviewed where the state dropped charges). And Wich's response did not focus on the truthfulness of the child's statements but was instead a follow-up to her prior testimony about the ways in which offenders try make their abuse seem like "no big deal" to "keep [the abuse] a secret." See Morrison, 985 P.2d at 5 (citing People v. Fasy, 829 P.2d 1314 (Colo. 1992), for the proposition that an expert's testimony that necessarily implied a child's report of sexual abuse was true was nevertheless proper because the expert testified in general terms, did not focus on the truthfulness of the child, and, except for one instance, did not make any explicit reference to the victim's truthfulness).

## IV. Mittimus

¶ 30 Finally, both parties agree that the jury convicted Brown of only one count of SAOC – POT (victim under fifteen, pattern), and not SAOC – POT (victim under fifteen). Because the mittimus

15

incorrectly states that Brown was convicted of the latter charge, we remand the case for correction of that error under Crim. P. 36.

## V. Disposition

¶ 31　We affirm Brown's judgment of conviction but remand the case to the district court to correct the clerical error described above.

JUDGE GOMEZ and JUDGE MOULTRIE concur.